[Nos. 45366-1-I; 47359-0-I.   Division One.   October 1, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. DARIN LAMAR WARD, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. RICKEY B. BAKER, *Appellant*.

---

[11] 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000).

[12] 137 Wn.2d 1, 969 P.2d 21 (1998), *aff'd*, 530 U.S. 57 (2000).

622

*David B. Koch* (of *Nielsen, Broman & Associates, P.L.L.C.*), for appellants.

*Norm Maleng, Prosecuting Attorney*, and *Lee D. Yates* and *David M. Seaver, Deputies*, for respondent.

GROSSE, J. — In this consolidated appeal, Darin Ward and Rickey Baker challenge their convictions for felony violation of a no-contact order. Under the statute in effect at the time, violation of a no-contact order was a felony if the act on which the charge was based was an assault "not amounting to assault in the first or second degree." Ward and Baker contend that to establish the crime the State must prove a negative: that the predicate assault was *not* a first or second degree assault. We hold that this is not an element of the crime which the State must prove and affirm the convictions.

## FACTS

*State v. Ward*:

On January 9, 1999, Kent police officer Robert Constant responded to a domestic violence report at the Sterling Ridge Apartments. He noticed two women run across the street but did not contact them initially. He and other officers at the scene found no signs of a domestic violence dispute. A short while later they received a second call reporting a domestic violence dispute at the White Dove Apartment complex across the street from the Sterling Ridge Apartments. Officer Constant again responded, and this time R.S. and her sister R.W. contacted them. He recognized them as the two women he had observed crossing the street. They were excited and upset.

R.S. stated that she had encountered Darin Ward at the Sterling Ridge Apartments. She and Ward had previously been involved in a romantic relationship, but now there was a no-contact order prohibiting Ward from having contact with her. She told police officers that when she encountered Ward he attempted to pull her down the stairs, force her into a car, and pull off her clothes. Officer Constant observed that R.S.'s clothes were torn, although she had no visible injuries.

R.W. told the officers that she was in a friend's apartment when she heard her sister screaming outside. R.W. ran out and saw Ward trying to drag her sister down the stairs. R.W. intervened and chased Ward away with a piece from a picket fence. Ward came after them again as they headed toward the White Dove Apartments. Ward grabbed R.S., but ran off when R.W. threatened him with a fire extinguisher. R.W. stated that Ward attempted to hit her when she intervened. R.S. and R.W. testified differently at trial, but the content of their testimony is not relevant to the issue on appeal.

At trial, Ward proposed a special verdict form instructing the jury to make a finding about the degree of assault. It read:

> We, the jury, return a special verdict by answering as follows:
>
> Was the conduct that constituted a violation of the protection order an assault which did not amount to an assault in the first or second degree?

The court rejected Ward's proposed verdict form but included a special verdict form asking the jury to determine whether Ward's conduct was an assault and an instruction that defined assault. The jury convicted Ward of felony violation of a no-contact order.

*State v. Baker*:

Rickey Baker and A.B. had an amorous relationship that ended in May of 1999. Both Baker and A.B. are male and A.B. is married, although his marriage is an open one in which the spouses are free to date whomever they please.

In November 1999, the Seattle Municipal Court entered a no-contact order prohibiting Baker from contact with A.B. Around midnight on February 20, 2000, A.B. saw Baker's car drive by his home. A few moments later, a brick came through A.B.'s window. He went outside and chased after Baker. Baker hid behind a pole and struck A.B. as he passed. The two then scuffled in the street. Baker kicked A.B. in the groin and knocked him to the ground causing A.B.'s elbow to split open. Both A.B.'s wife and a neighbor called police officers and Baker ran off. This event formed the basis for charging a felony violation of a no-contact order.

The State also charged Baker with three other violations of the no-contact order. Two counts are not at issue here. The third count arose from a telephone call A.B.'s wife received at their home. The male caller said A.B. had been leaving notes for him all over town asking him to call. A.B.'s wife thanked the caller and hung up. She was familiar with Baker's voice and recognized that he was the caller. She then reported the contact to police officers.

A jury convicted Baker on all four counts.

## DISCUSSION

Ward and Baker argue that in order to establish felony violation of a no-contact order the State must prove that a defendant's conduct that violated the order was an assault that did "not amount to assault in the first or second degree." They characterize this as an essential element of the crime and argue their convictions should be reversed because the information in each case failed to include the "not amount to" language. Thus, they contend, the information did not identify all the essential elements of the charge. They also argue that the State was relieved of its burden of proving each element of the crime because neither set of jury instructions required the jury to find the assault did not amount to assault in the first or second degree.

The relevant portion of the statute in effect when Ward and Baker were convicted read as follows:

> Willful violation of a court order issued under this section is a gross misdemeanor. Any assault that is a violation of an order issued under this section and that does not amount to assault in the first or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony[.][1]

The effect of this provision is to elevate violations based on misdemeanor assaults to felonies. This ensures that no-contact order violations involving assaults are punished more severely than violations based on non-assaultive contact. The Legislature did not need to increase the penalty for violations involving more serious assaults because first and second degree assaults are already class A and B felonies and may be charged as felonies in their own right.[2]

■■ An "essential element is one whose specification is

---

[1] Former RCW 10.99.050(2) (1998). Ward and Baker were both charged under a version of the statute in effect until June 9, 2000. The statute was rewritten and recodified under RCW 10.99.050 and RCW 26.50.110. The current version of RCW 26.50.110(4) is substantially similar to the language in the earlier version of the statute at issue in this case.

[2] *See* RCW 9A.36.011(2); RCW 9A.36.021(2).

necessary to establish the very illegality of the behavior[.]"[3] Because it is not necessary to prove the absence of a first or second degree assault to establish that there was an assault on the person with whom contact is prohibited, the language on which Ward and Baker rely is not an essential element of felony violation of a no-contact order. We rejected an argument based on the same theory in *State v. Dukowitz*.[4] Dukowitz argued that the complaint charging him with simple assault was deficient because it omitted the language at issue here. Like felony violation of a no-contact order, the crime with which the State charged Dukowitz was defined as an assault "not amounting to" any higher degrees of assault.[5] We reasoned that just as the various means by which a crime may be committed are not an essential element of the crime charged, similarly, the various means of committing an assault other than the degree charged are not essential elements of simple assault.[6] The same reasoning applies to felony violation of a no-contact order. The "not amounting to" language in former RCW 10.99.050(2) (1998) parrots the definition of fourth degree assault in RCW 9A.36.041. If proof of the absence of conduct amounting to a higher degree of assault is not an essential element of fourth degree assault,[7] it is also not an element of a crime predicated on fourth degree assault.

Ward and Baker rely on *State v. Azpitarte* to argue that the "not amounting to" language is an element of felony violation of a no-contact order.[8] But that is not what *Azpitarte* held. Azpitarte was charged with second degree assault and felony violation of a no-contact order predicated on two separate assaults that occurred in short succession.

---

[3] *State v. Johnson*, 119 Wn.2d 143, 147, 829 P.2d 1078 (1992) (citing *United States v. Cina*, 699 F.2d 853, 859 (7th Cir. 1983)).

[4] *State v. Dukowitz*, 62 Wn. App. 418, 814 P.2d 234 (1991).

[5] *Dukowitz*, 62 Wn. App. at 422 (quoting former RCW 9A.36.040(1) (1987)).

[6] *Dukowitz*, 62 Wn. App. at 422.

[7] *State v. Davis*, 60 Wn. App. 813, 821, 808 P.2d 167 (1991), *aff'd*, 119 Wn.2d 657, 835 P.2d 1039 (1992).

[8] *State v. Azpitarte*, 140 Wn.2d 138, 995 P.2d 31 (2000).

In the first assault he grabbed the victim by her arm and unsuccessfully attempted to pull her out of a truck. Then, he returned and attempted to pull the victim out of the truck by her hair. He was again unsuccessful, but he pulled out a handful of her hair, resulting in a second degree assault.[9] In pretrial motions, the State maintained it would rely upon the arm-grabbing assault alone to support the charge for felony violation of a no-contact order. But in closing argument the State invited the jury to rely on either assault to enhance the violation to a felony. Thus, it was possible that the jury based the felony conviction on the incident charged as a separate second degree assault (the hair pulling).

On appeal, Azpitarte argued that second degree assault could not be the predicate assault that elevates "violation of a no-contact order from a gross misdemeanor to a felony under RCW 10.99.040(4)."[10] The court agreed and held that it could not because to do so would be to read the unambiguous phrase "that does not amount to assault in the first or second degree" out of the statute. But the very short, pointed opinion did not hold that, contrary to our opinion in *Dukowitz*, proof of a negative—that the assault was *not* in the first or second degree—was an essential element of a felony violation. Rather, it said that, under the statutory scheme, "[a]ll assault convictions connected to violation of a no-contact order will result in a felony, either through the assault itself or through the application of subsection (b)."[11]

Baker also argues a variation on this theme: i.e., that because he inflicted what he characterizes as "substantial bodily harm" on A.B., the assault amounted to second degree assault. Under *Azpirtarte*, then, Baker's conduct could not be the predicate felony. In essence, Baker argues he should have been charged with second degree assault, a class B felony, and because he was not, his conviction must be reversed.

---

[9] *Azpitarte*, 140 Wn.2d at 140.

[10] *Azpitarte*, 140 Wn.2d at 140. The Legislature removed the language at issue in *Azpitarte* and in this case in Laws of 2000, ch. 119, §§ 18, 20.

[11] *Azpitarte*, 140 Wn.2d at 142.

■ We must reject this argument for two reasons. First, absent circumstances not present here, we cannot interfere with the prosecutor's discretion to choose what crime to charge based on a specific set of facts. Second, if we were to do so, we would put the courts in the position of second guessing the prosecutor's charging decision in every case with similar statutory language.[12]

■ Prosecutors have a great deal of discretion in making charging decisions because reasonable persons can disagree about the sufficiency of evidence to charge.[13] An exercise of prosecutorial discretion is generally proper when it is based on a consideration of the elements that can be proved or the penalties on conviction.[14] Thus, prosecutors generally have the discretion to charge a lesser crime. Here, the prosecutor elected to charge a lesser degree of assault as the basis for a felony violation of a no-contact order even though it is a class C felony and second degree assault is a class B felony. So long as this is a rational choice, and it was here, we cannot question the reasons for this exercise of discretion. Potential proof problems, uncertainty about witnesses, or a desire to obtain a domestic violence order are all valid reasons for choosing to charge Baker as the State chose.

Because the "not amounting to" language does not add an essential element to felony violation of a no-contact order we affirm Baker's and Ward's convictions.

■■ Baker also claims there was insufficient evidence to support his conviction on count 3 for a misdemeanor violation of a no-contact order. That charge was based on his telephone call to A.B.'s wife. This court reviews the

---

[12] These include assault in the second, third, and fourth degrees, RCW 9A.36.021, .031, .041; kidnapping in the second degree, RCW 9A.40.030; and stalking, RCW 9A.46.110.

[13] *State v. Brandt*, 99 Wn. App. 184, 192, 992 P.2d 1034, 9 P.3d 872 (2000); *State v. Lidge*, 111 Wn.2d 845, 850, 765 P.2d 1292 (1989) (quoting *United States v. Lovasco*, 431 U.S. 783, 793, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977)).

[14] *City of Kennewick v. Fountain*, 116 Wn.2d 189, 193, 802 P.2d 1371 (1991) (citing *United States v. Batchelder*, 442 U.S. 114, 125, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979); *In re Pers. Restraint of Taylor*, 105 Wn.2d 67, 68, 711 P.2d 345 (1985)).

evidence and all reasonable inferences therefrom in the light most favorable to the State.[15] The no-contact order in effect when Baker made the telephone call prohibited him from having contact with A.B. "in person, by telephone or letter, *through an intermediary*, or in any other way[.]"[16] While some no-contact orders prohibit contact with members of a victim's household, the order issued against Baker did not.[17]

Because Baker called A.B.'s telephone number and spoke with his wife rather than with A.B. himself, he argues that he did not have contact with A.B. But the order also prohibited contact through intermediaries. The jury could reasonably infer that A.B.'s wife told him about Baker's call. A.B. and his wife lived in the same house, both had been affected by the ongoing problems with Baker, and A.B.'s wife was concerned enough to notify police officers. This is sufficient evidence to support Baker's conviction on count 3.

We affirm Ward's and Baker's convictions.

AGID, C.J., and KENNEDY, J., concur.

Review granted at 146 Wn.2d 1015 (2002).

---

[15] *State v. Gill*, 103 Wn. App. 435, 443, 13 P.3d 646 (2000).

[16] (Emphasis added.)

[17] *See* 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 36.53, at 185 (2d ed. 1994 & Supp. 1998) (containing alternative language prohibiting contact with members of a victim's family).