[No. 71906-3.   En Banc.]

Argued October 15, 2002.   Decided March 6, 2003.

THE STATE OF WASHINGTON, *Respondent*,
v. DARIN LAMAR WARD, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*,
v. RICKEY B. BAKER, *Petitioner*.

*David B. Koch* (of *Nielsen, Broman & Koch, P.L.L.C.*), for petitioners.

*Norm Maleng, Prosecuting Attorney*, and *Lee D. Yates* and *David M. Seaver, Deputies*, for respondent.

MADSEN, J. — Petitioners Darin Ward and Rickey Baker challenge their convictions of felony violation of a no-contact order under former RCW 10.99.040(4)(b) and 10-.99.050(2) (1997) respectively. The statutory language at the time provided that a willful violation of a no-contact order is a gross misdemeanor, but "[a]ny assault that is a violation of an order issued under this chapter . . . and that does not amount to assault in the first or second degree under 9A.36.011 or 9A.36.021 is a class C felony." RCW

26.50.110(4).[1] Petitioners argue that the provision "does not amount to assault in the first or second degree" establishes an essential element of felony violation of a no-contact order that must be pleaded and proved.

We hold that the provision is not an essential element of felony violation of a no-contact order. The State is required to prove that the predicate assault "does not amount to assault in the first or second degree" only when the State additionally charges the defendant with first or second degree assault. Accordingly, we affirm petitioners' convictions.

Petitioner Baker also challenges his conviction of misdemeanor violation of a no-contact order, arguing that the evidence is insufficient to support a conviction. We hold that a rational trier of fact could have found Baker guilty beyond a reasonable doubt of the misdemeanor and affirm his conviction.

## FACTS

Darin Lamar Ward

The State charged Ward with a single count of felony violation of a preconviction domestic violence no-contact order that prohibited him from having contact with his former girl friend, Rhoda Simmons. The information alleged that Ward violated the no-contact order by "intentionally assaulting Rhoda Simmons." Clerk's Papers (CP) Ward at 58.[2]

At trial, the jury was presented with evidence that Ward assaulted Simmons while she was visiting an apartment

---

[1] Ward and Baker violated no-contact orders under former RCW 10.99.040 and 10.99.050 respectively. In 2000, the legislature struck the language elevating the crime from a misdemeanor to a felony from both RCW 10.99.040 and 10.99.050 and moved it to RCW 26.50.110(4). Currently both RCW 10.99.040 and 10.99.050 provide that violation of a no-contact order is punishable under RCW 26.50.110(4). RCW 26.50.110(4) provides that any assault, "that does not amount to assault in the first or second degree," elevates the violation from a gross misdemeanor to a felony. Laws of 2000, ch. 119, § 24.

[2] Because Baker and Ward had separate trials, the citations to the record refer to the clerk's papers and transcripts for each respective case.

complex. The evidence showed that Ward dragged her down apartment stairs, pulled off her shirt, and attempted to push her into a car. The jury received a "to convict" instruction that read:

> To convict [Ward] of the crime of violation of a no-contact order, each of the following elements ... must be proved beyond a reasonable doubt:
> (1) That on or about the 9th day of January, 1999, the defendant willfully had contact with Rhoda Simmons;
> (2) That such contact was prohibited by a no-contact order;
> (3) That the defendant knew of the existence of the no-contact order;
> (4) That the acts occurred in King County, Washington.

CP Ward at 22.

Ward's attorney initially proposed a special verdict form asking the jury, "[w]as the conduct that constituted a violation of the protection order an assault which did not amount to an assault in the first or second degree?" CP at 56. The judge declined the proposed instruction stating, "I can't provide this special form without defining assault in the first or second degree. That doesn't work." Verbatim Report of Proceedings (RP) at 41. The State suggested deleting the reference to first and second degree assault and instead simply asking the jury, "[w]as the conduct that constituted a violation of the no-contact order an assault?" *Id.* Ward's attorney acquiesced to the deletion, and the special verdict form was submitted as the State suggested.

The jury instructions included a definition of "assault" as:

> [A]n intentional touching of another person that is harmful or offensive regardless of whether any physical injury is done to the person. A touching is offensive if the touching would offend an ordinary person who is not unduly sensitive.

CP Ward at 29. The jury answered "yes" to the special verdict form question of assault, finding Ward guilty of felony violation of a no-contact order.

Rickey B. Baker

The State charged Baker with four crimes, but only Counts I and III are at issue before this court. Count I charged Baker with a felony violation of a postsentence court order that prohibited him from contacting his former lover, Oleg Ivanov. During the trial, Ivanov testified that on the night of February 20, he saw Baker drive by his home. Shortly thereafter, a brick came through Ivanov's window, and he ran out of his house and gave chase of the culprit. Unbeknownst to Ivanov, Baker was hiding behind a pole, and when Ivanov ran past, Baker jumped out and struck him. Baker proceeded to kick him in the groin, knocking him to the ground and causing his elbow to split open. Baker subsequently ran away.

The information charged Baker with felony violation of a postsentence domestic violence no-contact order based on Baker's alleged intentional assault of Ivanov. At trial, Baker did not propose jury instructions nor did he object to those offered. The court instructed the jury that:

> To convict [Baker] of the crime of violation of a no-contact order in Count I, each of the following elements . . . must be proved beyond a reasonable doubt:
> (1) That on or about February 20, 2000, [Baker] willfully had contact with Oleg Ivanov;
> (2) That such contact was prohibited by a no-contact order;
> (3) That the defendant knew of the existence of the no-contact order;
> (4) That the acts occurred in the State of Washington County of King City of Seattle.

CP Baker (Nov. 9, 2000) at 28. The jury found Baker guilty of violation of the no-contact order as charged in Count I.

The trial court submitted a special verdict form to the jury which mirrored the special verdict form submitted in Ward's case. It asked the jury, "[w]as the conduct that constituted a violation of the no-contact order in Count I an assault?" CP Baker (Jan. 13, 2001) at 52. The court defined assault for the jury in language identical to that used in Ward's case. The jury answered "yes" to the special verdict

question of assault, finding Baker guilty of felony violation of the no-contact order.

In Count III, the State charged Baker with a misdemeanor violation of a court order that prohibited contact with Ivanov "in person, by telephone or letter, through an intermediary, or in any other way." State Ex. 1. The State alleged that Baker's misdemeanor violation of the order occurred on June 1, 2000 when he telephoned Ivanov's home. The telephone call was answered by Ivanov's wife, Doreen Cornwell, who resided with him at the time. Cornwell testified on direct examination:

Q: And do you recall on June 1st of 2000 whether or not you were home on that day?

A: Yes, I was home.

Q: On that date do you recall receiving any phone calls of concern?

A: Mr. Baker called. When we moved our—we had had an unlisted phone number. And he called. I picked up the phone. And he said "Doreen," and I tentatively—

Q: How did you know the person on the other end of the phone was Mr. Baker?

A: We have talked before. We have talked before.

Q: What did Mr. Baker state to you at that time?

A: He said something like Oleg had been leaving notes all over town asking him to call. And I said, "thank you for the information." And I hung up. And then later that day I talked to someone else. And they said I needed to report it. And I reported it.

RP Baker (Nov. 13, 2000) at 34. The complete evidence offered of the incident consisted of Cornwell's direct testimony. Based on this evidence, the jury returned a guilty verdict on the misdemeanor violation of the no-contact order.

Both Baker and Ward appealed, challenging the constitutionality of the charging documents and the jury instructions in their respective cases. Their cases were consolidated for appellate review. They argued that the "does not amount to assault in the first or second degree" language of

former RCW 10.99.040(4)(b) and 10.99.050(2) functions as an essential element of felony violation of a no-contact order that must be pleaded and proved. Baker also challenged the sufficiency of the evidence for his conviction of a misdemeanor violation of a no-contact order.

The Court of Appeals affirmed both Ward's and Baker's convictions of felony violation of a no-contact order. *State v. Ward*, 108 Wn. App. 621, 630, 32 P.3d 1007 (2001). The court held that the absence of a first or second degree assault is not an essential element of a felony violation that must be proved by the State and affirmed the convictions. *Id.* at 627. The court also found sufficient evidence to support Baker's conviction of misdemeanor violation of a no-contact order and affirmed. *Id.* at 630. We granted Ward and Baker's petition for review.

## DISCUSSION

### Petitioners' Felony Violations of a No-Contact Order

The legislature has codified violation of a no-contact order in chapter 10.99 RCW, entitled "Domestic Violence—Official Response." The stated purpose of the legislation is "to recognize the importance of domestic violence as a serious crime against society and to assure the victim of domestic violence the maximum protection from abuse which the law and those who enforce the law can provide." RCW 10.99.010. One way the legislature has seen fit to protect victims of domestic violence is to enhance the penalty for violation of a no-contact order when the violation is based on an assault rather than on nonassaultive conduct. Former RCW 10.99.040(4)(b), .050(2).

The language of former RCW 10.99.040(4)(b) and 10.99.050(2), now codified under RCW 26.50.110(4), provides that "[a]ny assault that is a violation of an order issued under this chapter . . . and that does not amount to assault in the first or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony." The provision serves to elevate what would be a gross misdemeanor to a felony

violation; thus raising the maximum sentence from one year to five years. RCW 9A.20.021(1)(c), (2).

Petitioners argue that the provision "does not amount to assault in the first or second degree" functions as an essential element of felony violation of a no-contact order. Former RCW 10.99.040(4)(b), .050(2). They contend that their felony violations must be reversed because the charging informations did not include the element and the element was not submitted to the juries for a finding beyond a reasonable doubt. Ward additionally argues that he was denied his Sixth Amendment right to effective representation when his counsel agreed to omit language that would have made it clear to the jury that a finding of felony violation of a no-contact order could not be based on conduct that amounted to first or second degree assault.

■ An "essential element is one whose specification is necessary to establish the very illegality of the behavior" charged. *State v. Johnson*, 119 Wn.2d 143, 147, 829 P.2d 1078 (1992) (citing *United States v. Cina*, 699 F.2d 853, 859 (7th Cir. 1983)). Petitioners contend that in *State v. Azpitarte*, 140 Wn.2d 138, 141, 995 P.2d 31 (2000), this court held that an essential element of felony violation of a no-contact order is that the predicate assault not amount to assault in the first or second degree. This is not *Azpitarte*'s holding.

In *Azpitarte*, the State charged the defendant with one count of second degree assault and one count of felony violation of a no-contact order. *Id.* at 140. The State's case revealed evidence of two assaults, the second degree assault that was charged and a separate uncharged fourth degree assault. Pretrial, the State maintained that it would rely solely on the fourth degree assault to prosecute the felony violation of a no-contact order. In closing arguments, however, the State invited the jury to rely on either assault to enhance the no-contact violation to a felony. *Id.* The jury instructions did not specify which assault or what degree was necessary for a felony conviction and required the jury to find only an "intentional assault." *Id.* The jury returned

guilty verdicts on both the second degree assault charge and the felony violation of the no-contact order. *Id.* Azpitarte appealed, and the Court of Appeals held that second degree assault could serve as a predicate for felony violation of a no-contact order. *Id.*

This court reversed, holding that "[t]he statute clearly states that second degree assault cannot serve as the predicate to make the violation a felony." *Id.* at 141. The statute provides that "[a]ny assault that is in violation of an order . . . and that does not amount to assault in the first or second degree under 9A.36.011 or 9A.36.021" will elevate the violation to a felony. RCW 26.50.110(4). Thus, if a defendant is charged and convicted under RCW 9A.36.011 or 9A.36.021, the statute proscribes the use of that assault to enhance a no-contact violation to a felony. In *Azpitarte*, we reversed the conviction because the jury may have relied on the second degree assault in finding him guilty. *Azpitarte*, 140 Wn.2d at 142. We did not, however, decide the issue here: must the State prove that the assault does not amount to assault in the first or second degree where the State does not additionally charge the defendant with first or second degree assault?

■■ As correctly identified by the Court of Appeals in this case, the purpose of the "does not amount to" provision is to elevate no-contact violations to a felony when *any* assault is committed. The legislature did not need to increase the penalty for first or second degree assault, since in their own right the crimes are class A and B felonies respectively. RCW 9A.36.011(2), .021(2). In contrast, a fourth degree assault conviction will result only in a gross misdemeanor. RCW 9A.36.041(2). We reiterate that the statutory scheme provides that "[a]ll assault convictions connected to violation of a no-contact order will result in a felony, either through the assault itself or through the application of subsection (b) [of RCW 10.99.040(4)]." *Azpitarte*, 140 Wn.2d at 142.

If we were to interpret the statutory language as requiring the State to disprove assault in the first or second

degree as an essential element of felony violation of a no-contact order, the defendant would be placed in the awkward position of arguing that his conduct amounts to a higher degree of assault than what the State has charged. Such an interpretation does not advance the legislature's purpose of assuring victims of domestic violence maximum protection from abuse (RCW 10.99.010), nor does it support the statute's intent to penalize assaultive violations of no-contact orders more severely than nonassaultive violations (former RCW 10.99.040(4)(b) and 10.99.050(2)).

Accordingly, we hold that the language, "does not amount to assault in the first or second degree under 9A.36.011 or 9A.36.021," does not function as an essential element of felony violation of a no-contact order but rather serves to explain that all assaults committed in violation of a no-contact order will be penalized as felonies. RCW 26.50.110(4).

■ Petitioners argue that the charging informations in their cases are insufficient because they did not contain the "does not amount to" language. The sufficiency of a charging document may be challenged for the first time on appeal since it involves a question of constitutional due process. *State v. Kjorsvik*, 117 Wn.2d 93, 107-08, 812 P.2d 86 (1991). Postverdict challenges, however, will be more liberally construed in favor of validity than when challenged pre-verdict. *Id.* at 105. Liberal construction review requires that the information reasonably apprise the defendant of the elements of the crime and that the defendant not suffer actual prejudice from any vague or inartful language in the information. *Id.* at 102, 106.

■ ■ Petitioners' informations contained all essential elements of felony violation of a no-contact order based on an assault. Since the State did not charge Ward or Baker with first or second degree assault, the State was not required to allege that petitioners' conduct did not amount to assault in the first or second degree. We hold the informations sufficient.

Petitioners also argue that the State was required to prove beyond a reasonable doubt that the assault "[did] not amount to assault in the first or second degree." RCW 26.50.110(4). Due process does require the State to prove every fact necessary to constitute the charged crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). In this case, however, the omitted language is not necessary to find felony violation of a no-contact order because the State did not additionally charge first or second degree assault. Accordingly, all elements of the crime were submitted to the jury for a finding beyond a reasonable doubt.

Lastly, Ward was not denied his Sixth Amendment right to effective representation when his attorney agreed to omit the "does not amount to" language from the jury instructions. An ineffective assistance of counsel claim requires the petitioner to meet two components. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Petitioner must show that counsel's performance was deficient, requiring a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment" and show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 669. Ward's counsel agreed to delete needless language, a completely reasonable act, rendering counsel's performance sufficient.

■ We hold that under former RCW 10.99.040(4)(b) and 10.99.050(2), proof that the predicate assault "does not amount to assault in the first or second degree under 9A.36.011 or 9A.36.021" is required only when the State additionally charges first or second degree assault. RCW 26.50.110(4). Petitioners' felony convictions are affirmed.

Baker's Misdemeanor Conviction

Baker also challenges his conviction of misdemeanor violation of a no-contact order arguing that the evidence is insufficient to support a finding that he violated the no-contact order. The Court of Appeals reviewed the evidence

and found it sufficient to support the conviction and affirmed. *Ward*, 108 Wn. App. at 630.

We review the sufficiency of the evidence under the same standard as used by the appellate court. When the sufficiency of the evidence is challenged in a criminal case all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). After viewing the evidence in the light most favorable to the State, the court determines whether any rational trier of fact could have found guilt beyond a reasonable doubt. *Id.*

█ Under the no-contact order, Baker was ordered "to have no contact with Oleg R. Ivanov in person, by telephone or letter, through an intermediary, or in any other way, except through an attorney of record." State Ex. 1. The evidence shows that Baker telephoned Ivanov's home and Ivanov's wife, Doreen Cornwell, answered the phone call. Cornwell recognized Baker's voice, and Baker proceeded to tell her that Ivanov "had been leaving notes all over town asking him to call." RP (July 18 & 19, 2000) at 34. The Court of Appeals held that a jury could reasonably infer that Cornwell told Ivanov about Baker's phone call because "[Ivanov] and his wife lived in the same house, both had been affected by the ongoing problems with Baker, and [Ivanov's] wife was concerned enough to notify police officers." *Ward*, 108 Wn. App. at 630.

Baker argues that a violation of the no-contact order requires that he "willfully had contact with Ivanov" and that he did not have such contact. He contends that the evidence at trial established no more than an attempted violation in that he called Ivanov's phone number and spoke to Ivanov's wife. He argues that if Cornwell had told Ivanov of the phone call, it is reasonable that she would have said so in testimony, and she did not do so. He also emphasizes that Ivanov himself never testified as to the event and concludes that such evidence establishes at most

an attempt and is insufficient evidence to support his conviction.

We agree with the Court of Appeals that a rational trier of fact could have found Baker guilty beyond a reasonable doubt of the misdemeanor violation. We do not, however, find it necessary to engage in speculation as to whether Cornwell told Ivanov of the phone call. The no-contact order prohibited Baker from contacting Ivanov by telephone or through an intermediary, and the evidence shows that Baker telephoned Ivanov's home and conveyed information about Ivanov to his wife. Based on this conduct alone, a jury was entitled to find that Baker violated the order. Accordingly, we affirm Baker's conviction of a misdemeanor violation of a no-contact order.

IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., and SMITH, J. PRO TEM., concur.

SANDERS, J. (dissenting) — The majority holds that proof of felony violation of a no-contact order does not require the state to prove the predicate assault is not first or second degree assault. Majority at 806. However, the relevant language of the statutes unambiguously requires just that:

> Any assault that is a violation of an order issued under this section *and that does not amount to assault in the first or second degree* under RCW 9A.36.011 or 9A.36.021 is a class C felony . . . .

Former RCW 10.99.040(4)(b), .050(2) (1997) (emphasis added).

The majority's holding violates the most fundamental rule of statutory construction as well as our holding in *State v. Azpitarte*, 140 Wn.2d 138, 995 P.2d 31 (2000) (per curiam). If the language of a statute is unambiguous we derive its meaning from the language of the statute alone without further judicial interpretation. *Wash. State Coalition for the Homeless v. Dep't of Soc. & Health Servs.*, 133 Wn.2d 894, 904, 949 P.2d 1291 (1997); *State v. Thorne*, 129 Wn.2d 736, 762-63, 921 P.2d 514 (1996). Furthermore, we

do not delete language from a clear statute even if the legislature intended something else but failed to express it adequately. *Azpitarte,* 140 Wn.2d 138; *Wash. State Coalition for the Homeless,* 133 Wn.2d at 904 (citing *Geschwind v. Flanagan,* 121 Wn.2d 833, 841, 854 P.2d 1061 (1993); *Adams v. Dep't of Soc. & Health Servs.,* 38 Wn. App. 13, 16, 683 P.2d 1133 (1984)). We recognized in *Azpitarte* that RCW 10.99.040 is unambiguous and that it "clearly excludes the use of first and second degree assaults to elevate violation of a no-contact order from a gross misdemeanor to a felony." 140 Wn.2d at 141.

Nonetheless, the majority holds that *any* assault can serve as predicate to felony violation of a no-contact order so long as the prosecution does not separately charge first or second degree assault. Majority at 806. This intrudes on the power of the legislature to legislate, a power given the legislature, not the judiciary, under our state constitution. *See* CONST. art. II, § 1. Moreover, the power to define crimes and maximum punishments is fundamentally legislative and subject to judicial review in only limited circumstances (which are not alleged to apply here). *See State v. Ermert,* 94 Wn.2d 839, 847, 621 P.2d 121 (1980). This court should "resist the temptation to rewrite an unambiguous statute to suit our notions of what is good public policy, recognizing the principle that 'the drafting of a statute is a legislative, not a judicial, function.' " *State v. Jackson,* 137 Wn.2d 712, 725, 976 P.2d 1229 (1999) (quoting *State v. Enloe,* 47 Wn. App. 165, 170, 734 P.2d 520 (1987)). These statutes limit liability to assaults not amounting to first or second degree assault; but the majority expands the statutes to include these assaults.

The majority asserts support for its claim in RCW 10.99.010, the legislative intent section of chapter 10.99 RCW, the domestic violence law. Majority at 813. That statute provides in part, "The purpose of this chapter is to recognize the importance of domestic violence as a serious crime against society and to assure the victim of domestic violence the maximum protection from abuse which the law

and those who enforce the law can provide." RCW 10.99.010. As discussed above, it is improper to look outside the unambiguous text of the statute, but even if we were justified in considering legislative intent here, that intent is not served by the majority. RCW 10.99.010 also provides:

> The legislature finds that the existing criminal statutes are adequate to provide protection for victims of domestic violence. However, previous societal attitudes have been reflected in policies and practices of law enforcement agencies and prosecutors which have resulted in differing treatment of crimes occurring between cohabitants and of the same crimes occurring between strangers. . . . [i]t is the intent of the legislature that criminal laws be enforced without regard to whether the persons involved are or were married, cohabiting, or involved in a relationship.

Under the majority's construction, the prosecution is permitted to treat assaults serious enough to charge as first or second degree assault, i.e., as class A or B felonies, as felony violations of a no-contact order instead, i.e., as a class C felony. This allows prosecutors to treat assaults in domestic situations less seriously than other assaults, which is directly contrary to the legislative intent expressed in RCW 10.99.010.

Although the statutes' clear language excludes first and second degree assaults as predicates to felony violation of a no-contact order, the special jury instructions in these trials did not include this element, asking only "[w]as the conduct that constituted a violation of the no-contact order in Count I an assault?" Clerk's Papers (CP) Baker at 52.[3] As discussed above, our holding in *Azpitarte* and the clear language of the statutes require that the predicate assault for felony violation of a no-contact order not be first or second degree assault. Under the sixth and fourteenth amendments to the United States Constitution the State must prove every fact necessary to constitute a charged crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358,

---

[3] "Was the conduct that constituted a violation of the no-contact order an assault?" CP Ward at 14.

364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State v. Acosta*, 101 Wn.2d 612, 615, 683 P.2d 1069 (1984). Determination of the level of assault is therefore necessary for conviction and this element, like any other, must be proved beyond a reasonable doubt to the jury. Furthermore, the Supreme Court has held that a fact which increases the maximum penalty under a state or federal statute must be included in the charging document, submitted to a jury, and proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Proof of this necessary fact was not included in the jury instruction, relieving the prosecution of its burden to prove every element. Failure to instruct the jury on an element of the charged crime is manifest constitutional error. *State v. Scott*, 110 Wn.2d 682, 688 n.5, 757 P.2d 492 (1988). The remedy is reversal. *See, e.g., State v. Smith*, 131 Wn.2d 258, 265-66, 930 P.2d 917 (1997); *State v. Miller*, 131 Wn.2d 78, 90-91, 929 P.2d 372 (1997); *State v. Byrd*, 125 Wn.2d 707, 713-14, 716, 887 P.2d 396 (1995).

Furthermore, the charging document in each case failed to include the requirement that the predicate assault be one not amounting to first or second degree assault. CP Baker at 7; CP Ward at 58. Every essential element of an offense must be included in the information to give defendants adequate notice of what they are charged with so that they may adequately prepare a defense. *State v. Kjorsvik*, 117 Wn.2d 93, 98, 812 P.2d 86 (1991). Where, as here, the challenge to the information is raised only on appeal, the information will pass constitutional muster even if the missing element is "fairly implied from language within the charging document." *Kjorsvik*, 117 Wn.2d at 104; *State v. Moavenzadeh*, 135 Wn.2d 359, 363, 956 P.2d 1097 (1998); RCW 10.37.050 ("The indictment or information is sufficient if it can be understood therefrom . . . . (6) [t]hat the act or omission charged as the crime is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended . . . ."). But merely

820

citing to pertinent statutes or naming the offense is insufficient unless that name informs the defendant of each essential element. *State v. Vangerpen*, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995). The remedy for an insufficient information is reversal without prejudice. *State v. Simon*, 120 Wn.2d 196, 199, 840 P.2d 172 (1992).

In conclusion, the clear language of then RCW 10.99.040 and RCW 10.99.050 excludes first and second degree assault as predicates to felony violation of a no-contact order. Because the level of assault determines the maximum penalty it must be included in the charging document, instructions to the jury, and be proved beyond a reasonable doubt. In these cases that was not done and, as a result, the convictions of petitioners for felony violation of a no-contact order must be reversed.

I dissent.

ALEXANDER, C.J., and JOHNSON, J., concur with SANDERS, J.