2016 OCT -3 AM 9: 39

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73803-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JOSHUA LEE REDDING, | ) | |
| | ) | |
| Appellant. | ) | FILED: October 3, 2016 |
| | ) | |

APPELWICK, J. — Redding appeals his conviction for failure to register as a sex offender while on community custody. Redding was in violation of required in person reporting to the sheriff's office when a detective told him that he had to report by the next scheduled date, February 13, 2015, or charges would be forwarded to the prosecutor. Redding turned himself in to the county jail on February 12th on an outstanding warrant. He argues that the sheriff's office breached a unilateral contract when it forwarded the charges to the prosecutor. He also argues the prosecuting attorney's office abused its discretion and violated his due process rights. We affirm.

FACTS

Joshua Redding was convicted as a juvenile in 1997 for first degree child molestation. Since then he has been required to register as a sex offender under RCW 9A.44.130. On January 13, 2015, Redding registered in Snohomish County and reported his status as homeless/transient. Because of his status, Redding was required to report to the Snohomish County Sheriff's Office every Tuesday during normal business hours. When a person misses any given week, the Sheriff's office may file a failure to register. According to Detective Scott Berg, "typically" it would be "about two weeks before we filed a Fail[ure] to Register on a homeless individual."

After reporting on January 13, 2015, Redding had not reported for four subsequent Tuesdays. Detective Berg called and spoke with Redding on February 10, 2015, informing him that he was out of compliance. Redding had been unable to report because he "was up towards the mountains" and "wasn't on a bus line anywhere."

During this time Redding was under Department of Corrections (DOC) supervision as a result of a prior failure to register conviction from 2013. He had been released from custody on January 10, 2015 and had a duty to report to his Community Corrections Officer (CCO) on January 20th. He did not report as required and DOC issued an escape arrest warrant. Redding knew he was on a warrant and did not want to report to the sheriff's office, because he did not want to be arrested.

Redding called Detective Berg back on February 11th and mentioned that he had tried to contact his CCO, but had not been able to reach him. Detective Berg tried to call Redding's CCO and discovered that he was out of the office. Detective Berg then called Redding back that same day to give him the name of another CCO to contact. Detective Berg informed Redding that he was still out of compliance and that he needed to report by February 13 or failure to register charges would be filed.

Redding turned himself in to the Snohomish County Jail on the evening of February 12th. He did not report directly to Detective Berg because he "didn't want to chance it. It was about 6:00 at night on a Thursday, and I wanted to just get straight down there." Redding's CCO notified Detective Berg that Redding had been arrested and booked into the county jail.

On February 24, 2015, the sheriff's office requested that charges be filed against Redding for failure to register as a sex offender. At that time Redding was still being held in the Snohomish County jail. On February 26, 2015, Redding was charged with felony failure to register as a sex offender while on community custody.

Redding moved to dismiss the charges based on Detective Berg's statement that he had to report by the 13th or charges would be filed. The court denied the motion, finding that "[n]o contract and no promises [were] made to the defendant by the Detective Berg," nor was there an "implied or expressed agreement as to not forwarding charges," nor any "contractual agreement or offer

3

of immunity." The trial court also found that Redding could not "graft contract theory to ('use or derivative use') Immunity [sic] case law and then apply it to the facts of this case."

The case proceeded to a bench trial on stipulated facts. Redding was convicted of felony failure to register while on community custody on July 13, 2015. He had been previously been convicted three times for failing to register in 2011, 2012, and 2013.

Based on Redding's offender score, the standard range sentence for this offence was 43-57 months. The sentencing court imposed an exceptional downward sentence of 36 months and 48 months community custody, because Redding's "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law w[as] significantly impaired by [his] diagnosed mental illness."[1] Redding appeals.

## DISCUSSION

CrR 8.3(b) provides that a trial court may dismiss an action when, "due to arbitrary action or governmental misconduct, there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial."[2] We review

---

[1] Redding had been diagnosed with unspecified schizophrenia spectrum and trauma and stress related disorders.

[2] While Redding did not cite CrR 8.3(b) as the basis for his motion to dismiss, his contract law arguments and claims for violation of the 5th and 14th Amendments raise issues of arbitrary action and governmental misconduct that are covered by the rule. We therefore apply the manifest abuse of discretion standard when reviewing his motion to dismiss. State v. Moen, 150 Wn.2d 221, 226, 76 P.3d 721 (2003).

a trial court's denial of a motion to dismiss under CrR 8.3(b) for a manifest abuse of discretion. State v. Moen, 150 Wn.2d 221, 226, 76 P.3d 721 (2003). Dismissal under this rule is an extraordinary remedy and is improper absent material prejudice to the rights of the accused. State v. Blackwell, 120 Wn.2d 822, 830-31, 845 P.2d 1017 (1993).

Redding first argues that the charges should have been dismissed, because he and Berg had an agreement that no charges would be filed if he reported before February 13, 2015. He contends that the parties formed a unilateral contract when he accepted Berg's offer by turning himself into the Snohomish County jail on February 12, 2015. According to Redding, the sheriff's office breached the contract and violated the duty of good faith and fair dealing by filing charges after he had complied with the terms of the agreement.

RCW 9A.44.130 provides the general registration and reporting guidelines for specified sex offenders. The statute sets forth the procedures and reporting requirements that offenders must follow, once they have registered, including processes for moving or becoming homeless. State v. Durrett, 150 Wn. App. 402, 406-07, 208 P.3d 1174 (2009). Under RCW 9A.44.130(6)(b), a person who lacks a fixed residence must report weekly, in person, to the sheriff of the county where he or she is registered. The weekly report shall be on a day specified by the county sheriff's office, and shall occur during normal business hours. Id. A person commits the crime of failing to register as a sex offender under RCW 9A.44.132(1)

if he or she knowingly fails to comply with any of the requirements of RCW 9A.44.130, including failing to report on a weekly basis.

The State argues that Detective Berg has no power to offer immunity from prosecution; only the prosecuting attorney can enter into such agreement and it must be approved by the court. We agree. This court has expressly held that principles of contract law have little application to criminal law matters outside of plea agreements. State v. Reed, 75 Wn. App. 742, 744, 879 P.2d 1000 (1994). In Reed, we held that a promise by police to "drop charges" exceeded their authority, and that such an agreement could not be enforced as a contract without the prosecutor's involvement. Id. at 745.

Here, as in Reed, Berg had no authority to promise Redding that charges would not be filed. The county prosecutor is the only one with the discretion to decide whether to file criminal charges. Id. at 744. A police officer cannot extend immunity from prosecution. State v. Unga, 165 Wn.2d 95, 104, 196 P.3d 645 (2008); State v. Hull, 78 Wn.2d 984, 989, 481 P.2d 902 (1971). Therefore, any such agreement to refrain from charging Redding would not be enforceable as a contract.[3]

Even if Berg had the authority, and contract principles applied in this case, there was unilateral contract. In any breach of contract action, a court must first

_____

[3] Redding argues that his breach of contract claim does not rely upon the ultimate charging decision, but that Berg "breached the contract when [he] forwarded the charges to the prosecuting attorney's office." This is of no distinction. Regardless of whether it involves the actual charging decision or the forwarding of charges, under Reed and Hall, the sheriff's office does not have authority to extend immunity to individuals who are not in compliance.

determine whether an enforceable contract has been created. Storti v. Univ. of Wash., 181 Wn.2d 28, 35, 330 P.3d 159 (2014). For a unilateral contract, one party must make a promise that the second party may accept and establish a contract only through performing his or her end of the bargain. Id. at 35-36. Unilateral contracts are defined by traditional contract concepts of offer, acceptance, and consideration. Id. at 35. The party asserting the existence of a unilateral contract has the burden of proving each essential element of a unilateral contract. Multicare Med. Ctr. v. Dep't of Soc. & Health Servs., 114 Wn.2d 572, 584 n.19, 790 P.2d 124 (1990), overruled in part on other grounds Neah Bay Chamber of Commerce v. Dep't of Fisheries, 119 Wn.2d 464, 832 P.2d 1310 (1992).

The State argues there was no contract because there was no consideration on Redding's part. We agree. All Redding had to do to fulfill the "contract" was to report to the Sheriff's office as required. The performance of a preexisting legal obligation is not valid consideration. Id. at 584-85. Redding was required to report weekly under RCW 9A.44.130(6)(b). Merely fulfilling this requirement is not sufficient consideration for a contract.[4]

Redding next argues that the Snohomish County prosecutor abused its discretion by filing charges against him without taking mitigating circumstances into account. Even assuming that Redding's subjective belief in a promise of

---

[4] Redding argues that his consideration for the contract was "coming into compliance with his registration duties," which was "Detective Berg's primary concern." This only affirms the fact that Redding had a preexisting legal duty, and his compliance with that duty would not provide consideration for a contract.

immunity was a mitigating circumstance, his argument has no merit. First, Redding did not raise this issue before the trial court. Under RAP 2.5(a), an issue cannot be raised for the first time on appeal unless it is a manifest error affecting a constitutional right. The appellant must show the alleged error is "manifest" by demonstrating actual prejudice. State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest. Id..

Here, there is no evidence in the record that the prosecutor failed to account for mitigating circumstances in the charging decision. Even if it had, Redding cites no authority to support his position that failure to consider a mitigating condition is an abuse of discretion.

Prosecutors are vested with wide discretion in determining how and when to file criminal charges. State v. Lewis, 115 Wn.2d 294, 299, 797 P.2d 1141 (1990). But, that discretion is not 'unfettered'; the prosecutor's discretionary authority may not be exercised in a manner that violates the accused's due process rights. Moen, 150 Wn.2d at 227. An exercise of prosecutorial discretion is generally proper when it is based on a consideration of the elements that can be proved or the penalties on conviction. State v. Ward, 108 Wn. App. 621, 629, 32 P.3d 1007 (2001), aff'd, 148 Wn.2d 803, 64 P.3d 640 (2003).

Exercise of this discretion involves consideration of numerous factors, including the public interest as well as the strength of the State's case. Moen, 150

Wn.2d at 227. A prosecutor can assess any mitigating or aggravating factors before filing charges. State v. Rice, 159 Wn. App. 545, 566, 246 P.3d 234 (2011), aff'd on other grounds, 174 Wn.2d 884, 279 P.3d 849 (2012). But, there is no statute requiring the prosecutor to consider mitigation evidence in a noncapital case. Koenig v. Thurston County, 175 Wn.2d 837, 846, 287 P.3d 523 (2012). Here, Redding cannot show that the prosecutor abused its discretion by filing charges in spite of his belief that Berg promised he would not be charged.

Finally, Redding argues that the charging decision violated his due process rights. According to him, the filing of charges, after he had been told otherwise, infringed those " 'fundamental conceptions of justice which lie at the base of our civil and political institutions.' " (Quoting United States v. Lovasco, 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977).) Unfortunately, Redding has not shown that he has any right to not be charged under RCW 9A.44.132 when he declined to report for four weeks, let alone that such a right is a fundamental principle of justice deeply rooted in our State's law. We find no error in the trial court's denial of Redding's motion to dismiss.

Citing State v. Blazina, 182 Wn.2d 827, 344 P.3d 680 (2015) and State v. Sinclair, 192 Wn. App. 380, 393, 367 P.3d 612, review denied, 185 Wn.2d 1034, 377 P.3d.733 (2016), Redding asks that appellate costs be presumptively denied.. The State did not respond to this assertion.

In Sinclair, we determined that RAP 15.2(f) created a presumption of continued indigency throughout review. 192 Wn. App. at 393. Here, Redding was

9

found to be indigent prior to trial. He was represented by an appointed attorney at trial and his appeal was authorized *in forma pauperis*. The State has provided no factual basis to overcome the continuing presumption of indigency. Therefore, we conclude that appellate costs should not be awarded to the State.

Affirmed.

WE CONCUR: