# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57657-1-II |
| Respondent, | |
| v. | |
| SERGIO HERNANDEZ, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Sergio Hernandez was subject to a domestic violence no-contact order in which he was restrained from having contact with Jessica Crawford, except under very limited circumstances. With the no-contact order in place, Hernandez made 10 phone calls to Crawford from a phone number marked "private." On one occasion, Crawford answered a call, recognized Hernandez's voice, and heard Hernandez threaten to kill her. Crawford did not answer the other 9 calls. A phone application on Crawford's phone and call logs from Crawford's phone company showed that the private calls originated from Hernandez's cell phone number. Crawford reported the calls to law enforcement.

A Cowlitz County Sherriff's Deputy met with Hernandez at Hernandez's brother's home and did not give Hernandez *Miranda*[1] warnings. At the end of that meeting, Hernandez admitted to having made the calls to Crawford.

The State charged Hernandez with 10 counts of violating of a domestic violence no-contact order. A jury found him guilty on all counts. The court found Hernandez to be indigent. The court

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

imposed a $500 crime victim penalty assessment and a $100 domestic violence assessment. The State has since agreed to strike the crime victim penalty assessment but not the domestic violence assessment.

Hernandez appeals, arguing that his confession was obtained while he was in custody but without *Miranda* warnings, that there was insufficient evidence to sustain his convictions on 9 of the 10 counts, and that the trial court erred by imposing the crime victim penalty assessment and the domestic violence assessment.

We accept the State's concession and remand for the trial court to strike the crime victim penalty assessment. On remand, the trial court may revisit the domestic violence assessment in light of Hernandez's indigence. We otherwise affirm.

## FACTS

A.      Background

1.      November 2021 phone calls

 In April 2021, the Clark County Superior Court entered a domestic violence no-contact order against Hernandez preventing him from contacting Crawford. Specifically, the order provided that Hernandez was restrained from "[c]oming near *and from having any contact whatsoever in person or . . . by phone,* mail, or any means, *directly or indirectly*," with Crawford, with exceptions for effectuating service of process through a third party or mail, and for making written contact through text or email for the sole purpose of raising the child Hernandez and Crawford have in common. 1 Verbatim Rep. of Proc. (VRP) at 111 (emphasis added). The order was set to expire April 2026.

In November 2021, Crawford received and answered a phone call from a phone number marked "private." The caller, who she recognized as Hernandez, said, "I will kill you." 1 VRP at

114. Throughout that month, Crawford received nine more calls from a number marked "private." Crawford did not answer those nine calls.

To identify the private caller, Crawford installed an application on her phone that revealed phone numbers linked to private calls. The application showed that the calls to Crawford were coming from the same phone number which Crawford recognized as Hernandez's cell phone number. Crawford then contacted law enforcement and reported the calls from Hernandez. Law enforcement obtained call logs from Crawford's cell phone provider. The call records showed that Crawford indeed received nine calls in November 2021, all from the same phone number.

2. Hernandez's meeting with law enforcement

After receiving reports from Crawford about the calls, Cowlitz County Sheriff's Deputy Gary Enbody called Hernandez at the number Crawford gave him. During that phone call, Hernandez agreed to speak with Enbody in person. The two arranged to meet at Hernandez's brother's house.

Enbody arrived in uniform, alone, at Hernandez's brother's house, where Hernandez was present, along with two of his family members. There, Enbody asked Hernandez if he had called Crawford, as shown in the call logs that Crawford's phone company provided. Hernandez denied having made the calls to Crawford. Enbody then told Hernandez the easiest way to determine if the calls came from Hernandez's phone "would be for [Hernandez] to consent to have our detective search his phone." 1 VRP at 96.

Hernandez said he would need to talk to his attorney about the search, but not in regards to speaking further with the Enbody. Deputy Enbody testified in the CrR 3.5 hearing that at that point, he told Hernandez "if you had a lawyer already in mind, I'd certainly let you call and talk to him if that's what you wanted to do." *Id.* at 99.

3

Enbody then ceased questioning and told Hernandez that he was going to seek a search warrant. Hernandez then asked Enbody if the two could speak outside the home, away from Hernandez's family members. Once they were outside, Hernandez admitted to Enbody that he had placed the calls to Crawford. Enbody did not recite a Miranda warning to Hernandez at any point during their interaction.

B.    Trial

At trial, the jury heard testimony from Crawford about the 10 calls she received in November 2021. The jury also saw the domestic violence no-contact order and the call logs provided by Crawford's cell phone provider. Finally, Enbody testified about the interaction he had with Hernandez at Hernandez's brother's home consistent with the facts described above.

The jury found Hernandez guilty of all 10 counts of violating a domestic violence no-contact order. The court found Hernandez indigent. At sentencing, the court imposed a $500 crime victim penalty assessment and a $100 domestic violence assessment.

ANALYSIS

I.  HERNANDEZ'S STATEMENTS TO ENBODY

Hernandez argues that the trial court erred in concluding that he was not in custody for purposes of *Miranda* when he spoke to Enbody, thus rendering his confession inadmissible. We conclude that it is immaterial whether Hernandez was in custody when he admitted to law enforcement that he called Crawford in violation of a domestic violence no-contact order because his conviction is otherwise supported by overwhelming untainted evidence.

The admission of a confession obtained in violation of *Miranda* is subject to harmless error analysis. *State v. Mayer*, 184 Wn.2d 548, 550, 362 P.3d 745 (2015) (holding a sheriff's *Miranda* advisement to defendant was contradictory and confusing and thus rendered his confession not

4

knowing and intelligent; but admission of defendant's improperly admitted confession was harmless error in light of overwhelming untainted evidence of defendant's guilt). A constitutional error is harmless if we find that the jury verdict is unattributable to the error beyond a reasonable doubt. *State v. Watt*, 160 Wn.2d 626, 635, 160 P.3d 640 (2007). The Washington Supreme Court has adopted the "'overwhelming untainted evidence'" standard for this purpose. *State v. Anderson*, 171 Wn.2d 764, 770, 254 P.3d 815 (2011) (quoting *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985)). Assuming without deciding that Hernandez's confession was admitted in error, we review the record on appeal, looking only to the "untainted evidence," to determine whether it is so overwhelming that it necessarily leads to a finding of guilt. *Id.*

Here, the remaining untainted evidence of guilt is overwhelming. Crawford testified that she received calls linked to Hernandez's cell phone number, and exhibits admitted into evidence at trial included call records establishing that the "private" calls to Crawford originated from Hernandez's cell phone number. Moreover, there was never any assertion that someone else had control of Hernandez's cell phone, and Hernandez never contended that someone else made calls from his phone. In fact, Hernandez's arguments to this court are predicated on the assertion that he indeed called Crawford's phone, but that Crawford did not answer all of his calls. Not once did Hernandez argue that he did not call Crawford himself, nor was there any evidence in the record to suggest the contrary.

Taken together, the evidence showed that Hernandez was the restrained party of a domestic violence no-contact order in which he was prohibited from contacting Crawford, the protected party. This no-contact order was in effect in November 2021, when Crawford's cell phone records show 10 occasions in which calls were placed to her from Hernandez's cell phone number. Again, Hernandez has never asserted someone else had control over his phone.

It is immaterial whether the trial court erred in concluding that Hernandez was not in custody for the purposes of *Miranda* because absent Hernandez's confession, the remaining untainted evidence of Hernandez's guilt was overwhelming.

## II. DOMESTIC VIOLENCE NO-CONTACT ORDER VIOLATION

Hernandez concedes that he made prohibited contact once, when Crawford answered the phone, but he argues there was insufficient evidence for the jury to conclude that the nine remaining unanswered calls Hernandez made to Crawford constituted "making contact" in violation of the domestic violence no-contact order. We disagree.

In a sufficiency of the evidence challenge, we review the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found Hernandez guilty of violating the domestic violence no-contact order beyond a reasonable doubt. *See State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). *See also State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Insufficient evidence claims "admit[] the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. However, we must reverse a conviction if there is insufficient evidence to prove an element of the crime. *State v. Hickman*, 135 Wn.2d 97, 103, 954 P.2d 900 (1998).

Here, court documents establish that Hernandez was subject to a domestic violence no-contact order prohibiting various forms of "contact" with Crawford, including contact by phone. Nine of the 10 counts of Hernandez's violation of the no-contact order were based on instances where Hernandez called Crawford, but Crawford did not answer her phone. Hernandez contends that his unanswered calls to Crawford did not constitute "contact," and at most, they amounted only to attempted violations of the domestic violence no-contact order. Appellant's Br. at 25.

Hernandez cites no published case law to support his argument that unanswered calls do not rise to the level of "contact."

Not only does Hernandez's argument lack precedential support, it is also directly at odds with cases establishing that a defendant may be guilty of violating a no-contact order without ever effectuating actual or direct communication with a protected party. *See State v. Ward*, 148 Wn.2d 803, 816, 64 P.3d 640 (2003) (holding that there was sufficient evidence to support a defendant's violation of a no-contact order when the defendant went to the protected party's home and spoke with his spouse, absent any evidence that the spouse conveyed the defendant's message to the protected party).

In *Ward*, the defendant was subject to a no-contact order, which provided that the defendant "'have no contact with [the protected party] in person, by telephone or letter, through an intermediary, or in any other way, except through an attorney of record.'" 148 Wn.2d at 815 (quoting record). As in *Ward*, Hernandez's no-contact order similarly restrained Hernandez from "[c]oming near and from having any contact whatsoever in person or through other[s] by phone, mail, or any means, directly or indirectly, except for mailing or service of process of court documents, by a third party or contact by [Hernandez's] lawyers with [Crawford]." 1 VRP at 111. Like Hernandez, the defendant in *Ward* argued that the evidence showed no more than an attempted violation of the no-contact order because the defendant did not willfully contact the protected party.

The Washington Supreme Court rejected *Ward*'s argument and affirmed the violation, ultimately establishing that a defendant may be guilty of violating a no-contact order without ever directly communicating with the protected party. *See Ward,* 148 Wn.2d at 816. Moreover, Hernandez does not dispute the fact that he willfully and knowingly called Crawford's cell phone.

Though Crawford did not answer 9 of the 10 calls, she did receive them, and she was able to later identify the private call number as belonging to Hernandez.

Viewing the evidence in the light most favorable to the State, there was sufficient evidence for a rational juror to conclude beyond a reasonable doubt that Hernandez violated a provision of the domestic violence no-contact order prohibiting "any contact whatsoever . . . by phone" when he called Crawford's cell phone 10 times, regardless of whether Crawford answered the calls. 1 VRP at 111.

### III. LEGAL FINANCIAL OBLIGATIONS

Hernandez argues that the trial court erred when it imposed both the $500 crime victim penalty assessment and the $100 domestic violence assessment because it failed to properly consider the assessments' impact on Hernandez, despite his indigence. The State concedes that the crime victim penalty assessment should be stricken on remand. We agree that the crime victim penalty assessment must be stricken, but the domestic violence assessment can be imposed regardless of indigence.

The domestic violence assessment statute encourages the court to solicit input from the protected party about the impact of imposing the assessment, but the court is not required to do so. RCW 10.99.080(5) provides that "[w]hen determining whether to impose a penalty assessment under this section, judges are encouraged to solicit input from the victim or representatives for the victim in assessing the ability of the convicted offender to pay the penalty, including information regarding current financial obligations, family circumstances, and ongoing restitution." RCW 10.99.080(5); *see State v. Smith*, 9 Wn. App. 2d 122, 127, 442 P.3d 265 (2019) (noting that RCW 10.00.080(5) "encourages judges to inquire as to whether imposition of an assessment on the

defendant will impact the victim" but "does not require courts to examine the assessment's effect on the defendant").

Here, as in *Smith*, the trial court was encouraged, but not required, to solicit information from Crawford as the protected party regarding the impact the penalty assessment may have on her. The trial court was not required by statute to examine the impact of the penalty assessment on Hernandez himself.

Because the law did not require the trial court to consider Hernandez's indigence, the trial court acted within its discretion when it imposed the domestic violence assessment without soliciting input regarding potential hardships. However, because we remand for the trial court to strike the $500 crime victim penalty assessment, the trial court may want to take the opportunity on remand to revisit the $100 domestic violence assessment's impact in light of Hernandez's indigence.

## CONCLUSION

We affirm the convictions and remand to the trial court to strike the $500 crime victim penalty assessment. On remand, the trial court may choose to revisit the $100 domestic violence assessment.

No. 57657-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Veljacic, A.C.J.

Che, J.