/FILE\

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE AUG 1 8 2016

_Meadsen, C. J._

CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on Aug. 18, 2016

SUSAN L. CARLSON
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 92274-8 |
| Respondent, | ) | |
| v. | ) | En Banc |
| MICHAEL RAY GOSS, | ) | |
| Petitioner. | ) | Filed  AUG 1 8 2016 |

GONZÁLEZ, J.—Those charged with a crime have the constitutional right to know "the nature and cause of the accusation" made against them and the constitutional right to notice of every fact (other than prior convictions) that increases the penalties they face. WASH. CONST. art. I, § 22; *Apprendi v. New Jersey*, 530 U.S. 466, 476, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (quoting *Jones v. United States*, 526 U.S. 227, 243 n.6, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999)). Michael Goss argues that the charging document the State used to accuse him of second degree child molestation failed to meet this constitutional standard because it failed to allege that the victim was "at least twelve years old," the lower limit of the age range for that degree of the crime. RCW 9A.44.086(1). We conclude that Goss had

notice of the nature and cause of the accusation against him and notice of every fact that exposed him to a greater penalty. We affirm.

FACTS

The victim in this case, E.F., is the granddaughter of Goss's former fiancée. During the years Goss and E.F.'s grandmother were together, E.F. regularly visited, regularly spent the weekend, and regularly helped out with yard work and house work. For most of those years, Goss and E.F. seemed to get along well and had a playful relationship.

One summer Saturday in 2013, E.F.'s family held a family reunion on the Olympic Peninsula at Port Hadlock, a ferry ride away from where E.F. lived. Despite their earlier friendly relationship, E.F. resisted riding with Goss and wanted nothing to do with him. When Goss "tr[ied] to talk to her . . . she would answer him rudely . . . , something that wasn't ordinary for her." 2 Verbatim Tr. of Proceedings (VTP) (July 7, 2014) at 290.

After the reunion, on the way to the ferry dock, E.F.'s mother and aunt criticized the way E.F. had treated Goss, leaving E.F. angry and in tears. During the crossing, E.F. stayed in the car while her mother and aunt walked around the ferry. E.F.'s uncle lingered behind after they left to ask E.F. what was going on between her and Goss. After initial reluctance, E.F. told her uncle that Goss had fondled her breasts. Her uncle listened to her

and persuaded her to tell her mother. For the rest of the ferry ride, E.F.'s uncle kept himself between E.F. and Goss.

Late that evening, with her uncle at her side, E.F. told her mother what Goss had done. Within the hour, E.F.'s mother called the police. Within a day, E.F.'s mother told her own mother, who immediately ended her relationship with Goss. Goss was initially charged with one count of second degree child molestation. Later, a charge of attempted third degree child molestation was added.

E.F. testified at trial. She did not name any specific dates, but testified that Goss put his hands under her clothes and fondled her breasts once when she was in the seventh grade. She also described several incidents where Goss attempted to fondle her. Near the close of evidence, the State successfully moved to amend the charges to conform to the time frame E.F. testified to at trial.

Goss generally denied the events and sought, in his words, to "'impeach[]'" the victim. 1 VTP (July 2, 2014) at 22. His defense focused on the fact that E.F. had been inconsistent in stating the number of times she had been molested, when those molestations occurred, why she had not come forward earlier, and whether she had told anyone about the molestation before she told her uncle. At no point did Goss suggest that E.F.

3

was younger than 12 when the molestation was alleged to have happened.

The jury found Goss guilty of second degree child molestation and not guilty

of attempted third degree child molestation.

The Court of Appeals affirmed. *State v. Goss*, 189 Wn. App. 571, 358

P.3d 436 (2015). We granted review of two of the three issues Goss

presented in his petition. 185 Wn.2d 1001, 366 P.3d 1243 (2016).

ANALYSIS

1. ADEQUACY OF THE CHARGING DOCUMENT

We review the constitutional adequacy of charging documents de

novo. *State v. Johnson*, 180 Wn.2d 295, 300, 325 P.3d 135 (2014) (quoting

*State v. Siers*, 174 Wn.2d 269, 273-74, 274 P.3d 358 (2012)). When, as

here, the adequacy of the charging document is challenged for the first time

on appeal and when, as here, no prejudice is alleged, this court will

"examine the document to determine if there is any fair construction by

which the elements are all contained in the document." *State v. Hopper*, 118

Wn.2d 151, 155-56, 822 P.2d 775 (1992) (citing *State v. Kjorsvik*, 117

Wn.2d 93, 105, 812 P.2d 86 (1991)); Opening Br. of Appellant at 15-19 (not

alleging actual prejudice).

Goss argues that the charging document was fatally defective because

it did not allege the victim was at least 12 years old as required, he contends,

by the second degree child molestation statute, RCW 9A.44.086; due process; the Sixth Amendment to the United States Constitution; and *Alleyne v. United States*, ___ U.S. ___, 133 S. Ct. 2151, 2161, 186 L. Ed. 2d 314 (2013). Suppl. Br. of Pet'r at 1-2. The State argues that the fact the victim was at least 12 years old is not an element of the crime of child molestation; rather, it is "a ceiling that separates it from a higher degree" of the crime. Suppl. Br. of Resp't at 1. We agree with the State that the lower limit of the age range is not an element of child molestation under either Washington law or the federal constitution.

The original 2013 information charged in relevant part:

Count 1 Child Molestation In The Second Degree

That the defendant MICHAEL RAY GOSS in King County, Washington, between or about September 25, 2011 and September 24, 2012, being at least 36 months older than [E.F.] (DOB 09/25/1998), had sexual contact for the purpose of sexual gratification with [E.F.] (DOB 09/25/1998), who was 13 years old and not married to and not in a state registered domestic partnership with [E.F.] (DOB 09/25/1998).

Clerk's Papers (CP) at 1. Initially, the State alleged the molestation occurred when E.F. was 13, but after her testimony, the State amended the information to allege:

That the defendant MICHAEL RAY GOSS in King County, Washington, during an intervening period of time between September 25, 2010 and September 25, 2012 being at least 36 months older than

[E.F.] (DOB 9/25/98), had sexual contact for the purpose of sexual gratification with [E.F.] (DOB 9/25/98), who was less than 14 years old and not married to and not in a state registered domestic partnership with [E.F.] (DOB 9/25/98).

CP at 67.

"[A]ll essential elements of an alleged crime must be included in the charging document in order to afford the accused notice of the nature of the allegations so that a defense can be properly prepared," along with the particular facts supporting them. *Kjorsvik*, 117 Wn.2d at 101-02 (emphasis omitted) (citing 2 WAYNE LAFAVE & JEROLD ISRAEL, CRIMINAL PROCEDURE § 19.2, at 446 (1st ed. 1984)). Those the State accuses are not required "to search for the rules or regulations they are accused of violating." *Id.* at 101 (citing *State v. Jeske*, 87 Wn.2d 760, 765, 558 P.2d 162 (1976)).

While the legislature generally defines the elements of a crime, not every clause in every statute in Title 9A RCW creates an essential element of a crime. Instead, "'[a]n essential element is one whose specification is necessary to establish the very illegality of the behavior charged.'" *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013) (internal quotation marks omitted) (quoting *State v. Ward*, 148 Wn.2d 803, 811, 64 P.3d 640 (2003)). A fact can also become an element of the crime because of the consequences of its proof. "[A]ny 'facts that increase the prescribed range

of penalties to which a criminal defendant is exposed' are elements of the crime" (except prior convictions under some circumstances). *Alleyne*, 133 S. Ct. at 2160[1] (quoting *Apprendi*, 530 U.S. at 490); *Descamps v. United States*, ___ U.S. ___, 133 S. Ct. 2276, 2288, 186 L. Ed. 2d 438 (2013) (quoting *Apprendi*, 530 U.S. at 490). This is not an exhaustive list. *See generally State v. Tinker*, 155 Wn.2d 219, 221, 118 P.3d 885 (2005).

The State accused Goss of second degree molestation under RCW 9A.44.086(1). That statute says:

> A person is guilty of child molestation in the second degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.

RCW 9A.44.086 is one of three child molestation statutes, each of which designates a different degree of the crime depending on the age of the victim

---

[1] *Alleyne* does not directly concern charging. In *Alleyne*, the defendant was convicted of a federal firearms offense that carried a five year mandatory minimum if the defendant carried a firearm and a seven year mandatory minimum if that firearm was brandished. 133 S. Ct. at 2155 (citing 18 U.S.C. § 924(c)(1)(A)). A jury found beyond a reasonable doubt Alleyne carried a firearm. *Id.* at 2156. The trial court found by a preponderance of the evidence that Alleyne brandished that firearm and based his sentence on the higher mandatory minimum. *Id.* The United States Supreme Court concluded that a fact that "increase[d] [the] sentencing floor . . . forms an essential ingredient of the offense" and "was an element, which had to be found by a jury beyond a reasonable doubt." *Id.* at 2161, 2163. We acknowledge that we found otherwise in the context of indeterminate life sentences for sex offenders in *State v. Clarke*, 156 Wn.2d 880, 893, 134 P.3d 188 (2006), but this case does not give us an opportunity to explore whether *Clarke* remains good law. Unpreserved *Apprendi* charging defects have been held harmless. *See United States v. Cotton*, 535 U.S. 625, 627, 632-33, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002).

and the age difference between the victim and the perpetrator. First degree child molestation requires a victim younger than 12 and a perpetrator who is at least 36 months older. RCW 9A.44.083. Third degree child molestation requires a victim younger than 16 and a perpetrator who is at least 48 months older. RCW 9A.44.089. The legislative purpose in dividing the crime into these three degrees is not hard to discern. The legislature has reserved the harshest punishments for those who victimize the youngest children.

Goss contends that the low end of the age range is an essential element of the crime that must be charged and proved and that the three degrees of child molestation are analytically separate crimes, not greater or lesser degrees of each other. The necessary consequence of this position, as Goss forthrightly acknowledged at oral argument, is that a defendant charged with second degree child molestation would be necessarily acquitted if the victim testified at trial she was less than 12. *See* Wash. Supreme Court oral argument, *State v. Goss*, No. 92274-8 (July 7, 2016) at 35 min., 34 sec. to 36 min., 24 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. We find this untenable both as a matter of statutory construction and constitutional law.

8

Not every clause in a criminal statute creates an element of a crime. *Ward*, 148 Wn.2d at 813. Again, "'[a]n essential element is one whose specification is necessary to establish the very illegality of the behavior charged.'" *Zillyette*, 178 Wn.2d at 158 (internal quotation marks omitted) (quoting *Ward*, 148 Wn.2d at 811). Facts that merely divide a lower degree of a crime from a higher one will rarely meet this standard. Our opinion in *Ward* is illustrative. *Ward* concerned domestic violence statutes that made violations of a no-contact order a felony under certain circumstances, including when the violation is accompanied by an assault. *Ward*, 148 Wn.2d at 805 (citing former RCW 10.99.040(4)(b) and 10.99.050(2) (1997)). Among other things, those statutes provided that "'[a]ny assault that is a violation of an order issued under this chapter . . . and that does not amount to assault in the first or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony.'" *Id.* at 810 (quoting RCW 26.50.110(4) and citing former RCW 10.99.040(4)(b) (1997); former RCW 10.99.050(2) (1997)). While plainly the felony-elevating assault was an element that had to be charged and proved, we found that the statutory language "'does not amount to assault in the first or second degree'" did not establish an essential element of the crime. *Id.* at 806. We looked at the purpose of the statute: to ensure that violations of no-contact orders accompanied by assault

9

were punished as felonies. *Id.* at 813. "The legislature did not need to increase the penalty for first or second degree assault, since in their own right the crimes are class A and B felonies respectively." *Id.* at 812. The "does not amount to" clause was not a statutory element because it was not necessary for establishing the criminality of the act. *Id.* (citing *State v. Azpitarte*, 140 Wn.2d 138, 142, 995 P.2d 31 (2000)).

Similarly, in *Tinker*, we found that statutory language did not create an essential element of the crime. In *Tinker*, the defendant was charged with third degree theft under a former version of the statute that said in relevant part, "'A person is guilty of theft in the third degree if he or she commits theft of property or services which (a) does not exceed two hundred and fifty dollars in value.'" 155 Wn.2d at 222 (quoting former RCW 9A.56.050(1) (1998)). The charging document did not allege a value for the snowboarding pants Tinker allegedly stole. *Id.* at 220-21. Tinker unsuccessfully challenged the charging document during the trial for omitting the allegedly essential element of value. *Id.* at 221. We found that the value of the object alleged to be stolen was not an essential element of third degree theft; it simply divided the lowest degree of the crime from the next higher one. *Id.* at 222; *see also State v. Leyda*, 157 Wn.2d 335, 341, 138 P.3d 610 (2006) ("[V]alue is not an essential element of second degree identity theft and need

10

not be alleged in the charging document."); *State v. Keend*, 140 Wn. App. 858, 870-72, 166 P.3d 1268 (2007) (holding that the statutory phrase "not amounting to assault in the first degree" is not an essential element of second degree assault).

Based on *Ward, Tinker, Leyda, Keend*, and the overall statutory scheme, we conclude that the "who is at least twelve years old" clause in the second degree child molestation statute does not create an essential element of the crime. RCW 9A.44.086(1). The lower age limit (unlike the highest) is not a fact "'whose specification is necessary to establish the very illegality of the behavior charged.'" *Zillyette*, 178 Wn.2d at 158 (internal quotation marks omitted) (quoting *Ward*, 148 Wn.2d at 811).[2]

Our conclusion is bolstered by the fact that our Court of Appeals has repeatedly held that the lower age limit is not an element of analogous crimes without any corrective legislative response. *See, e.g., State v. Smith*, 122 Wn. App. 294, 296, 93 P.3d 206 (2004); *State v. Dodd*, 53 Wn. App. 178, 180-81, 765 P.2d 1337 (1989). The legislature's failure to respond suggests it does not think the lower age threshold in statutes involving sexual contact with children functions as an element.

---

[2] The fact that establishes the very illegality of child molestation is that the victim was under the age of 16; if younger than that, it is a matter of degree. If the State wishes to seek a higher penalty, it would be wise to allege the younger age.

11

While criminal statutes are strictly construed, "it is not true that they are to be construed so strictly that they would be defeated by a forced and over-strict construction." *State v. Larson*, 119 Wash. 123, 125, 204 P. 1041 (1922) (citing *United States v. Morris*, 39 U.S. (14 Pet.) 464, 10 L. Ed. 543 (1840)). *But see* RCW 1.12.010 ("The provisions of this code shall be liberally construed, and shall not be limited by any rule of strict construction."). Requiring the State to allege the victim was at least 12 years old would not further the announced legislative purpose of protecting "the children of Washington from sexual abuse." LAWS OF 1994, ch. 271, §§ 301-07.

We also conclude that the lower age limit does not need to be treated as an element under the *Apprendi* line of cases. *See* 540 U.S. at 490. Second degree child molestation is a class B felony and carries a lower presumptive sentence than first degree child molestation, a class A felony. RCW 9A.44.086, .083; RCW 9A.20.021(1)(a), (b). It is not a fact that will increase the penalty the defendant faces. *See Alleyne*, 133 S. Ct. at 2160 (quoting *Apprendi*, 530 U.S. at 490).

### 2. CLOSING ARGUMENT

Next, we must decide whether the trial court violated Goss's right to present a defense when it excluded argument that the jury could draw a

negative inference from the fact the State had not offered a recording of a detective's interview with Goss.

Briefly, the State had in its possession a 50 minute recording of the investigating detective's initial interview with Goss. Prior to trial, Goss moved to redact portions of the recording relating to pornography found on a computer seized from Goss's house and prior allegations of child molestation made against him. The State indicated that it did not plan to play the recording in its case in chief, and the trial judge reserved ruling until and unless the recording was offered. Neither side moved to admit the recording, and it is not part of the record on appeal. Prior to closing arguments, the State moved to exclude any argument about the recorded statement. Goss opposed the motion, arguing that he should be able to point out that the State had evidence it did not present. The trial court concluded that the recording was "inadmissible . . . hearsay and would only be admissible if it was an admission offered by a party opponent, and the party opponent didn't offer it." 3 VTP (July 8, 2014) at 672. However, the trial court did allow the defense to argue that "'[t]he detective spends 50 minutes with my client and 10 minutes with so-and-so,' and things like that." *Id.*

"We review the trial court's decision to limit closing argument for abuse of discretion." *State v. Wooten*, 178 Wn.2d 890, 897, 312 P.3d

41(2013) (citing *State v. Perez-Cervantes*, 141 Wn.2d 468, 475, 6 P.3d 1160 (2000)). "A court abuses its discretion 'only if no reasonable person would take the view adopted by the trial court.'" *Id.* (quoting *State v. Huelett*, 92 Wn.2d 967, 969, 603 P.2d 1258 (1979)). While counsel has considerable latitude in closing argument, argument "must be restricted to the facts in evidence and the applicable law, lest the jury be confused or misled." *Perez-Cervantes*, 141 Wn.2d at 474.

Goss does not challenge the trial judge's conclusion that the recording contained hearsay and does not contend that it contained anything helpful to him. Instead, he contends, since the State could have offered the tape under ER 801(d)(2), its failure to do so is analogous to a party not offering a witness that is peculiarly available to it or to the State commenting on what a defendant who waives the right to silence does not say. Suppl. Br. of Pet'r at 17-18 (citing *State v. Flora*, 160 Wn. App. 549, 556, 249 P.3d 188 (2011); *State v. Clark*, 143 Wn.2d 731, 765, 24 P.3d 1006 (2001)). He argues that any error was not harmless because the jury must have had doubts or it would not have acquitted him of attempted third degree child molestation. *Id.* at 20.

Goss's analogy to the missing witness doctrine is not persuasive. Under that doctrine, "'where evidence which would properly be part of a

case is within the control of the party whose interest it would naturally be to produce it, and, . . . he fails to do so, —the jury may draw an inference that it would be unfavorable to him.'" *State v. Blair*, 117 Wn.2d 479, 485-86, 816 P.2d 718 (1991) (alteration in original) (quoting *State v. Davis*, 73 Wn.2d 271, 276, 438 P.2d 185 (1968), *overruled on other grounds by State v. Abdulle*, 174 Wn.2d 411, 275 P.3d 1113 (2012)). Among other things, the doctrine applies "'only where, under all the circumstances of the case, such unexplained failure to call the witnesses creates a suspicion that there has been a willful attempt to withhold competent testimony.'" *Id.* at 488 (quoting *State v. Baker*, 56 Wn.2d 846, 859-60, 355 P.2d 806 (1960)). Nothing here creates such a suspicion. Goss did not make an offer of proof regarding the tape and in fact moved to redact portions relating to prior allegations of child molestation made against Goss by his daughter. The detective who questioned Goss on the tape testified at trial. The State may well have concluded it was better to present any relevant evidence through live testimony rather than a heavily redacted recording or transcript. The defense was allowed, over objection, to elicit from the detective that the interview was recorded. Nothing in this record suggests the State's decision not to play the tape was nefarious. Goss has not shown the trial court abused its discretion because the tape was analogous to a missing witness.

Nor are we persuaded that the State's decision not to offer the recordings is analogous to the State commenting on what a defendant who has waived the right to remain silent fails to say. Suppl. Br. of Pet'r at 18 (citing *Clark*, 143 Wn.2d at 765). We find the trial court did not abuse its discretion.

CONCLUSION

We hold that the fact that the victim was "at least twelve years old" is not an essential element of second degree child molestation. We hold the trial court did not abuse its discretion in limiting closing argument. Accordingly, we affirm.

16

_Gonzáles, J._

WE CONCUR:

_Madsen, C.J._

_Johnson, J._

_Owens, J._

_Stephens, J._

_Wiggins, J._

_Gordon McCloud, J._

_Siddoway, J.P.T._

_Yu, J._