# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of<br><br>ROBERT EDWARD JAMES,<br><br><br><br>                             Petitioner. | No. 49767-1-II<br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, J. — Robert Edward James seeks relief from personal restraint imposed following his conviction of second degree rape. James contends that his restraint is unlawful because his defense counsel was ineffective for (1) failing to investigate and understand DNA (deoxyribonucleic acid) evidence before trial, which impacted his ability to make a meaningful decision whether to accept a plea offer; (2) failing to request a reasonable belief jury instruction; (3) failing to object to an inferior degree jury instruction that he contends omitted an essential element of the offense; (4) failing to request a pretrial competency hearing for the testifying victim; (5) failing to object to the trial court's reliance on unproven facts when imposing his standard range sentence; (6) failing to object to restitution imposed for medical expenses that were unrelated to his crime of conviction.

James also contends that (7) court staff altered the trial record to conceal trial errors, (8) court staff failed to preserve a record of his proceedings by improperly destroying tape recordings of his trial proceedings, (9) he was denied due process because he was not provided with a record of sufficient completeness to raise issues on direct appeal, (10) his appellate counsel provided ineffective assistance, and (11) cumulative error denied his right to a fair trial.

We deny James's petition.

FACTS

In 2013, James was convicted of second degree rape. The facts underlying James's conviction were set forth in our unpublished opinion resolving his direct appeal as follows:

> On June 30, 2012, S.C. was inebriated and accepted a ride from James as she stumbled down the road. After driving around and purchasing alcohol, they went to the Thunderbird Motel and rented a room. A motel employee, Charlie Kim, saw S.C. in James's car drinking whiskey, and saw S.C. and James "hugging and kissing in the parking lot." Report of Proceedings (RP) (Mar. 26, 2013) at 38.
>
> A number of tenants at the motel became involved, including Wendy Taylor and Christa Anderson. Wendy Taylor heard screaming coming from James's room. She described what she heard as "crying, screaming real bad, somebody got hurt." RP (Mar. 26, 2013) at 53. The next morning, Kim found S.C. in the doorway of the motel room. S.C. was nude and had blood on her. She said to Kim, "'Rape, rape. I'm hurt, hurt. Call the police.'" RP (Mar. 26, 2013) at 36.
>
> Kim asked another tenant, Christa Anderson, to help S.C. Anderson observed blood and feces on the back of S.C.'.s leg. As she helped S.C. get dressed, S.C. was in pain and said she was "raped." RP (Mar. 26, 2013) at 62. S.C. told Anderson she was raped "from her backside." RP (Mar. 26, 2013) at 64. Anderson knew S.C. and said S.C. was groggy, drowsy, and "droggier [sic] than normal." RP (Mar. 26, 2013) at 63. Additionally, Anderson observed a "trashed" motel room with the phone ripped out of the wall. RP (Mar. 26, 2013) at 62.
>
> Law enforcement responded and transported S.C. to the hospital where Officer Jason Capps interviewed her, shortly after S.C.'s arrival. During the interview, he observed a bruise on S.C.'s neck. Officer Capps obtained a written statement from S.C. S.C. could not write at that time, so Officer Capps wrote the statement for her and read it back to her. When Officer Capps showed S.C. a photo lineup, she identified James as the man who raped her. S.C. testified that the man in the photo lineup is the same person she was with in the motel room.

*State v. James*, No. 44906-4-II, slip op. at 1-2 (Wash. Ct. App. March 31, 2015) (unpublished); http://www.courts.wa.gov/opinions

Miriam Thompson, a sexual assault nurse examiner, treated S.C. at the hospital. Thompson saw a milky white liquid between S.C.'s buttocks cheeks and obtained an anal swab. S.C. told Thompson that she had voluntarily accepted a ride from her brother's friend, Louis Pluff, who drove her to a motel. S.C. said that her assailant strangled her and anally penetrated her with his penis. S.C. had an anal tear. Due of the severity of S.C.'s injuries stemming from the assault, she was hospitalized for ten days, required three surgeries, and had to use a colostomy bag for two months.

James provided a DNA sample to law enforcement, which showed that his DNA was present in swabs taken from S.C.'s neck.

The State charged James with first degree rape. Before trial, the State gave defense counsel a Washington State Patrol Crime Lab report regarding the analysis of swabs taken from S.C. The report concluded in relevant part:

> No semen was detected on the pubic comb, vaginal, or perineal swabs. The p30 test result indicates the presence of semen on the anal swabs.
>
> No male DNA was detected in the vaginal, perineal, or anal swab samples.
>
> . . . .
>
> The DNA typing profiles obtained from the skin swabs ("Rt neck" and "Lt neck") are mixtures consistent with having originated from at least two individuals. The DNA profiles present are consistent with originating from the known profiles of [S.C.] and Robert James. . . .
>
> The deduced male profile obtained from the "Rt neck" sample was entered into and searched against the Washington State Patrol Combined DNA Index System (CODIS) database and no matches to a forensic unknown were found.

Br. of Pet'r (Dec. 27, 2016), Attach. 5 at 2.

3

At trial, James testified that he and S.C. kissed and were physically affectionate, but he denied having sexual intercourse with her. He further testified that S.C. was uninjured when he left the hotel room early in the morning and that he saw her talking with a transient male as he left.

During closing, the State argued, "In looking at [S.C.'s] statements, if you take out the name Louis Pluff and put in the man I got in the car with, it simplifies things, because the person she got in the car with is the person who raped her. And that's what's clear after going through all of the evidence." Verbatim Report of Proceedings (VRP) (March 27, 2013) at 129. Defense counsel argued in part during closing that S.C.'s interaction with the transient male at the hotel created a reasonable doubt that James was the person who raped her.

On appeal, James claimed in part that his defense counsel was ineffective for failing to adequately investigate and understand the DNA report. We declined to address this argument on direct appeal because it relied on matters outside the appeal record.

James also argued on appeal that his defense counsel was ineffective for failing to request a psychiatric examination of S.C. before trial. We rejected this claim on the merits, noting that James failed to "identify any compelling reason in the record that would 'overcome the strong presumption that psychological examinations of witnesses to crimes shall not be allowed.'" *James*, No. 44906-4-II, slip op. at 16-17 (quoting *State v. Isreal*, 91 Wn. App. 846, 853, 963 P.2d 897 (1998)).

After we issued the mandate disposing of James's direct appeal, James timely filed this petition. We dismissed his petition, concluding that the issues he raised were frivolous. Order Dismissing Petition, *In re Pers. Restraint of James*, No. 49767-1-II (Wash. Ct. App. July 12,

2017). James moved for discretionary review of our dismissal order, and a commissioner of our Supreme Court entered a ruling denying review. *See In re Pers. Restraint of James*, 190 Wn.2d 686, 687, 416 P.3d 719 (2018). James moved to modify the commissioner's ruling, and our Supreme Court granted his motion, granted discretionary review, and remanded to this court for further consideration of his petition. *In re James*, 190 Wn.2d at 687.

In granting discretionary review, our Supreme Court noted that our order dismissing James's petition "likely was correct in determining that the majority of [his] claims for relief are frivolous," but that his "ineffective assistance of counsel claim based on counsel's failure to understand the DNA evidence may not be frivolous, and it is not clear that the evidence presented and the State's statements regarding a plea offer were fully considered below." *In re James*, 190 Wn.2d at 689. Regarding the evidence supporting James's claim that his trial counsel was ineffective for failing to adequately investigate and understand the State's DNA evidence, our Supreme Court stated:

> James contends that he has provided sufficient evidence that his counsel misunderstood the State's DNA evidence and that this led him to reject a highly favorable plea offer. The State has filed a response and appears to acknowledge that James rejected a plea offer. Suppl. Resp. to Pers. Restraint Pet. at 3 (James "now regrets his decision to take his case to trial."). James asserts that his attorney incorrectly told him there was an unidentified male's DNA found on the victim—DNA that *did not* match James and *could* be matched to someone else; essentially, that the DNA evidence would support a defense theory that someone else could have committed the crime. Thus, James's documentary evidence, combined with the State's apparent acknowledgement that there was a plea offer, provides sufficient factual basis for more detailed consideration by the Court of Appeals as to James's claim that defense counsel was ineffective in misinterpreting the DNA report, including consideration of whether further factual development is justified by way of a reference hearing or whether to request the State to admit or deny specific factual allegations. *See* RAP 16.9(b); RAP 16.11(b).

5

*In re James*, 190 Wn.2d at 690. Our Supreme Court remanded the matter to this court to reconsider James's petition. *In re James*, 190 Wn.2d at 690.

## ANALYSIS

### I. PERSONAL RESTRAINT PETITION STANDARDS

A petitioner may request relief through a personal restraint petition when the petitioner is under an unlawful restraint. RAP 16.4(a)-(c). We have three options when reviewing a personal restraint petition: (1) dismiss the petition, (2) grant the petition, or (3) transfer the petition to the trial court for either a full determination on the merits or a reference hearing. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013).

"A personal restraint petitioner must prove either a (1) constitutional error that results in actual and substantial prejudice or (2) nonconstitutional error that 'constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 488, 251 P.3d 884 (2010) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 672, 101 P.3d 1 (2004)). The threshold question for an alleged constitutional violation is whether the petitioner has made a prima facie case that a violation occurred and that it resulted in actual prejudice. *In re Yates*, 177 Wn.2d at 17-18. The petitioner must prove prejudice by a preponderance of the evidence. *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004).

To make a prima facie showing required for a reference hearing, the petitioner must present the evidence that is available to support the factual allegations underlying the claim of unlawful restraint. *In re Yates*, 177 Wn.2d at 18. A petitioner must state with particularity facts that, if proven, would entitle the petitioner to relief—bald assertions and conclusory allegations

are not enough. *In re Pers. Restraint of Caldellis*, 187 Wn.2d 127, 146, 385 P.3d 135 (2016). If the petitioner's allegations are based on matters outside the existing record, the petitioner must demonstrate that he or she has competent, admissible evidence supporting the allegations. *In re Yates*, 177 Wn.2d at 18. If the evidence is based on knowledge in the possession of others, the petitioner must present their affidavits, with admissible statements, or other corroborative evidence. *In re Monschke*, 160 Wn. App. at 488. Factual allegations must be based on more than speculation, conjecture, or inadmissible hearsay. *In re Monschke*, 160 Wn. App. at 489.

If the petitioner fails to show that a constitutional violation occurred and that actual prejudice ensued, we will dismiss the petition. *In re Yates*, 177 Wn.2d at 17. If the petitioner establishes that a constitutional violation and actual prejudice occurred, we will grant the petition. *In re Yates*, 177 Wn.2d at 18. And if the petitioner makes a prima facie showing of a violation and resulting prejudice but we cannot determine the merits of the petitioner's claim on the record, we will remand for a reference hearing. *In re Yates*, 177 Wn.2d at 18.

When evaluating a personal restraint petition, we ordinarily will not review issues previously raised and resolved on direct review. *In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 388, 972 P.2d 1250 (1999). Raising the same issue but recasting it in a different manner does not justify a second review. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 720, 16 P.3d 1 (2001); *In re Pers. Restraint of Jeffries*, 114 Wn.2d 485, 488, 789 P.2d 731 (1990).

## II. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

A.      *Legal Principles*

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant the right to effective assistance of

counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Thomas*, 109 Wn.2d 222, 229, 743 P.2d 816 (1987). A defendant claiming ineffective assistance of counsel bears the burden of establishing that (1) counsel's performance was deficient and (2) the deficient performance resulted in prejudice. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011).

Defense counsel's performance is deficient if it falls "'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland*, 466 U.S. at 688). Prejudice ensues if there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34. We strongly presume that counsel's performance was reasonable and, to rebut this presumption, "the defendant bears the burden of establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 42 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). "We apply the same prejudice standard to ineffective assistance claims brought in a personal restraint petition as we do on appeal." *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 538, 397 P.3d 90 (2017).

B.    *Failure To Investigate and Understand DNA Report*

James first argues that his defense counsel was ineffective before trial for failing to adequately investigate and understand a report detailing the State's DNA evidence, and that defense counsel's failure impacted his ability to decide whether to accept a plea offer from the State. Although James has made a prima facie showing that defense counsel performed deficiently by failing to adequately investigate and understand the DNA report, we conclude that

he has failed to make a prima facie showing that he suffered prejudice as a result. Accordingly, James is not entitled to relief or a reference hearing on this issue.

Defense counsel's failure to adequately investigate, when combined with other deficiencies, can amount to ineffective assistance of counsel. *State v. A.N.J.*, 168 Wn.2d 91, 110, 225 P.3d 956 (2010). Counsel has a duty to conduct a reasonable investigation under prevailing professional norms. *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 252, 172 P.3d 335 (2007). An investigation must allow counsel to make informed decisions about representing the defendant, for example by investigating reasonable lines of defense. *In re Elmore*, 162 Wn.2d at 253. "The degree and extent of investigation required will vary depending upon the issues and facts of each case." *A.N.J.*, 168 Wn.2d at 111.

Defense counsel also has a duty to assist a client in evaluating a plea offer. *A.N.J.*, 168 Wn.2d at 111. The duty of counsel to conduct a reasonable investigation relates to counsel's obligation to assist a client in evaluating a plea offer. *A.N.J.*, 168 Wn.2d at 110-12. And, at a minimum, counsel's investigation must entail a reasonable evaluation of the evidence against the accused and the likelihood of a conviction if the case proceeds to trial "so that the defendant can make a meaningful decision as to whether or not to plead guilty." *A.N.J.*, 168 Wn.2d at 111-12.

In support of his claim that defense counsel was ineffective, James submitted a declaration stating that his defense counsel met with him to discuss the DNA report and told him that the report showed another male's DNA had been collected from the victim. James's declaration further states that, after reading the DNA report, he had concerns that defense counsel was misinterpreting its conclusions and requested counsel to contact the Washington State Patrol Crime Lab to confirm his interpretation. James states that defense counsel had

assured him that counsel would contact the crime lab to confirm his interpretation of the report's conclusions.

Additional evidence in the record suggests that defense counsel both misinterpreted the DNA report's conclusions and failed to contact the crime lab to confirm his interpretation of the conclusions. First, the DNA report itself is devoid of any conclusion that DNA from another male was collected from the victim. Second, defense counsel submitted a trial brief that asserted, "The DNA exam found this defendant's DNA on both sides of her neck and another, unidentified male's DNA elsewhere on her body." Clerk's Papers at 5. Finally, the following exchange during defense counsel's cross-examination of the State's DNA expert, Marion Clark, further suggests that counsel misinterpreted the DNA report's conclusions:

> [Defense counsel]: Okay. Now, you found another deduced male profile from the right neck sample?
>
> [Clark]: The mixture is consistent with [S.C.] and Mr. James, with the assumption that [S.C.] is present on her own neck swab. The types or the STRs that are present that do not belong to her can be subtracted out into a deduced male profile.
>
> [Defense counsel]: Okay. And that would be something other than the profile of Mr. James?
>
> [Clark]: No, in fact those types do match Mr. James. It's just a way so that we can take those types and compare them in a different way. So those types can be uploaded into our database or something like that without including [S.C.'s] types.

VRP (March 27, 2013) at 83-84.

James's declaration, together with the other evidence described above, are sufficient to make a prima facie showing that his defense counsel rendered deficient performance by failing to adequately investigate and understand the DNA report's conclusion that no other male DNA was obtained from S.C.

But James fails to make a prima facie showing that defense counsel's deficient performance prejudiced him. James argues that his counsel's failure to adequately investigate and understand the DNA report impacted his ability to make a meaningful decision about whether to accept the State's favorable plea offer. But James does not assert that he would have accepted the State's plea offer absent defense counsel's deficient performance in failing to investigate and understand the DNA report. This is fatal to James's ineffective assistance claim on this issue. Where ineffective assistance allegedly causes a defendant to reject a plea offer, a defendant must show a reasonable probability that, but for the deficient advice of counsel, he would have accepted the plea. *Lafler v. Cooper*, 566 U.S. 156, 164, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012). Having failed to identify any evidence that he would have accepted the State's plea offer, James cannot show the requisite prejudice to support a claim of ineffective assistance entitling him to relief or a reference hearing.

C.      *Reasonable Belief Jury Instruction*

Next, James argues that his defense counsel was ineffective at trial for failing to request a reasonable belief jury instruction. We disagree.

Here, the State charged James with second degree rape as an inferior-degree offense to first degree rape based on either forcible compulsion or the victim's incapability to consent due to physical helplessness or mental incapacity. RCW 9A.44.050(1)(a), (b). RCW 9A.44.030(1) provides an affirmative defense in sex offense cases where "lack of consent is based solely upon the victim's mental incapacity or upon the victim's being physically helpless," in which the defendant may establish by a preponderance of the evidence that he or she "reasonably believed that the victim was not mentally incapacitated and/or physically helpless."

James's defense at trial was that he did not have sexual intercourse with C.S. and that it was another individual who raped her and caused her injuries. Therefore, defense counsel's decision not to propose an inconsistent jury instruction stating that James committed the act but had a reasonable belief that the victim had the capacity was as a legitimate trial tactic. Accordingly, James cannot demonstrate ineffective assistance of counsel on this basis. *Grier*, 171 Wn.2d at 42.

D.      *Second Degree Rape To-Convict Instruction*

Next, James argues that defense counsel was ineffective for failing to object to the to-convict jury instruction for second degree rape because the instruction omitted a statutory element of the offense. Specifically, James argues that the to-convict jury instruction omitted the statutory element that the rape was committed "under circumstances not constituting rape in the first degree." RCW 9A.44.050(1). Because the statutory phrase, "under circumstances not constituting rape in the first degree" does not constitute an essential element of second degree rape, we disagree.

"Not every clause in a criminal statute creates an element of a crime." *State v. Goss*, 186 Wn.2d 372, 379, 378 P.3d 154 (2016). Rather, an "'essential element is one whose specification is necessary to establish the very illegality of the behavior' charged." *State v. Ward*, 148 Wn.2d 803, 811, 64 P.3d 640 (2003) (quoting *State v. Johnson*, 119 Wn.2d 143, 147, 829 P.2d 1078 (1992)). And "[f]acts that merely divide a lower degree of a crime from a higher one will rarely meet this standard." *Goss*, 186 Wn.2d at 379.

Facts demonstrating the absence of circumstances constituting first degree rape are not necessary to establish the illegality of second degree rape and, thus, the statutory language does serve to establish an essential element of second degree rape. Rather, the language merely serves to distinguish the lower degree crime from the higher degree crime. Accordingly, James cannot show that an objection to the to-convict instruction omitting the statutory language would have been successful and, thus, he fails to show the requisite prejudice to support his ineffective assistance of counsel claim on this basis.

E.      *Competency Hearing*

Next, James argues that defense counsel was ineffective for failing to request a pretrial competency hearing to determine if S.C. was capable of accurately recalling and relating events. This issue was raised, and rejected on its merits, in James's direct appeal. And a petitioner may not renew a ground for relief that was raised and rejected on its merits on direct appeal unless the interests of justice require reconsideration. *Gentry*, 137 Wn.2d at 388. Because James fails to demonstrate that the interests of justice require reexamination of this claim, we do not again address it.

F.      *Trial Court's Reliance on Unproven Facts at Sentencing*

Next, James argues that his defense counsel was ineffective for failing to object to the trial court's reliance on unproven facts when imposing a sentence at the top of the standard range. We disagree.

RCW 9.94A.530(2) provides in relevant part, "In determining any sentence other than a sentence above the standard range, the trial court may rely on no more information than is . . . admitted, acknowledged, or proved in a trial or at the time of sentencing." Here, the trial court

noted at sentencing that it was imposing a sentence at the top of the standard range based on the injuries S.C. suffered as a result of James raping her. The uncontested evidence at trial showed that S.C. suffered extensive injuries as a result of James's crime, which required ten days of hospitalization, three surgeries, and the use of a colostomy bag for two months.

Because the trial court relied on facts proven at trial when imposing a sentence at the top of the standard range, defense counsel had no basis to object under RCW 9.94A.530(2) and, thus, did not perform deficiently by failing to do so. Moreover, James cannot show a reasonable probability that the trial court would have imposed a different sentence had defense counsel objected. Accordingly, James fails to show the requisite prejudice to support his ineffective of assistance of counsel claim, and his ineffective assistance of counsel claim cannot succeed for this reason as well.

G.    *Restitution*

Next, James argues that his defense counsel was ineffective for failing to object to restitution imposed for medical expenses related to the victim's injuries. He argues that since he was not convicted of first degree rape, he was not liable for the victim's medical expenses. We disagree.

Former RCW 9.94A.753(3), (5) (2003) provided in relevant part that "[r]estitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person" and that the "restitution ordered . . . shall be based on . . . actual expenses incurred for treatment for injury to persons." A sentencing court has broad discretion to order restitution authorized by the statute. *State v. Davison*, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991).

Here, the jury returned a verdict finding James guilty of second degree rape based on his conduct in having sexual intercourse with S.C. either by forcible compulsion or when S.C. was incapable of consenting to the sexual intercourse. And regardless of the manner in which James engaged in the sexual intercourse with S.C., extensive evidence at trial showed that S.C. suffered injuries requiring hospitalization and multiple surgeries as a result of the sexual intercourse. Accordingly, the trial court acted within its discretion when imposing restitution for medical expenses related the victim's injuries and, thus, James cannot show that defense counsel was ineffective for failing to object to the restitution order.

### III. ISSUES RELATED TO TRIAL TRANSCRIPTS

Next, James raises a number of issues related to the transcript of trial proceedings produced for his direct appeal. Specifically, James asserts that court staff altered the trial record to conceal trial errors, court staff failed to preserve a record of his proceedings by improperly destroying the audio recordings used to produce the written transcripts of the trial proceedings, and he was denied due process because the altered transcripts impeded his ability to raise issues on direct appeal.

Regarding his contention that court staff intentionally altered the trial transcripts to conceal trial errors, James fails to identify any evidence in support of his assertion beyond pure speculation and, thus, we do not further consider it. *In re Yates*, 177 Wn.2d at 18; *In re Monschke*, 160 Wn. App. at 489.

James's contention that court staff failed to preserve a record of his proceedings by improperly destroying audio recordings of the trial proceedings is meritless because the court reporters filed certified transcripts of the trial proceedings. James's contention regarding the

destruction of the audio recordings appears to be that such recordings would show a discrepancy in the certified transcripts.

James contends that his due process rights were violated because the written transcripts of the trial proceedings contained material omissions preventing him from raising issues on appeal. In support of this contention, James filed a December 9, 2015 declaration from his sister, Karen Ketner, that stated she was present during trial and heard testimony from a nurse that the victim had told her "the person who picked me up is the person who raped me." Petition (Oct. 24, 2016), Attach. A. Karen Ketner further states in her declaration that defense counsel objected to this testimony, the trial court sustained the objection and offered to provide a curative instruction, and defense counsel declined the instruction by stating, "the bell has already been rung." Petition (Oct. 24, 2016), Attach. A. Karen Ketner also states in her declaration that the prosecutor repeatedly referred to this testimony during closing argument absent any objection from trial counsel. James also filed an October 12, 2016 declaration from his nephew, Jason Ketner, stating substantially the same.

These declarations, which assert the declarants' recollection to events that occurred at trial in apparent contradiction to the verbatim report of proceedings, are insufficient to demonstrate that the report of proceedings contained the material omissions alleged by James. The March 27, 2013 verbatim report of proceedings, which contains the entirety of nurse Miriam Thompson's testimony, was certified by the court reporter to be a full, true, and correct transcript of the trial proceedings. A declarant's statement that he or she recalls events at trial not present in the certified report of proceedings, without more, is not sufficient to show a material omission

in the certified transcripts. Accordingly, James cannot show that he is entitled to relief or a reference hearing based on the alleged material omissions.

Moreover, our review of the record reveals that James's witnesses' stated recollections are highly improbable. One of counsel's tactics, as demonstrated throughout trial, was to capitalize on S.C.'s initial contention that Louis Pluff was the person who picked her up and the person who raped her. Counsel raised this point with every witness who could reiterate these initial statements. Because it was James's trial strategy to create a reasonable doubt regarding identity, it was in his interest for counsel to allow all the witnesses to make these points. Thus, the contention that the transcript, in this one instance, contains a material omission of an objection to this evidence is senseless.

James raises several issues in his petition that rely on the alleged material omission that the trial court had sustained an objection to nurse Thompson's testimony that the victim told her "the person who picked me up is the person who raped me." Petition (Oct. 24, 2016), Attach. A. Specifically, James argues that, absent this alleged material omission, he could show that (1) the prosecutor committed misconduct at closing by referring to evidence deemed inadmissible at trial, (2) the trial court failed to address the prosecutor's misconduct, (3) defense counsel was ineffective for failing to request a curative instruction, (4) defense counsel was ineffective for failing to object to the alleged prosecutorial misconduct, and (5) defense counsel was ineffective for failing to move for a mistrial based on the prosecutor's alleged misconduct. Because James's fails to demonstrate that the report of proceedings contains the alleged omissions, the record does not support these claims.

James also argues that material omissions in the report of proceedings prevented him from arguing that his defense counsel was ineffective for abandoning him on the witness stand, and he presents his own declaration and Karen Ketner's declarations in support of this contention. Specifically, James claims that at a certain point in his testimony, defense counsel sat down, forcing him to provide a narrative about S.C.'s encounter with a transient male at the hotel. The record of proceedings shows that James provided this same testimony in response to defense counsel's questioning. Accordingly, even assuming that the report of proceedings was inaccurate in this regard, and that James provided testimony during a narrative rather than in response to defense counsel's questioning, he cannot show a substantial probability that the outcome of his trial would have differed as a result. He, therefore, fails to demonstrate ineffective assistance of counsel on this basis and, consequently, cannot show actual prejudice based on the alleged inaccuracy in the trial transcripts.

Additionally, James argues that material omissions in the trial record would show that the trial judge engaged in ex parte communications with the jury and failed to preserve for the record a question from the jury and the court's response thereto. James fails to identify any evidence in support of his claim that the trial judge engaged in ex parte communications and, thus, we do not consider it. Although James presents a declaration from his defense attorney's co-counsel suggesting that the jury submitted a question that the State, defense counsel, and trial court agreed to answer by stating that the jury had already been provided with relevant instructions, James presents no argument that he was prejudiced by the failure to preserve this question for the appellate record. Accordingly, even assuming that the trial court erred by failing to preserve the

18

jury's question for the record, James cannot demonstrate any prejudice resulting from this error and, thus, he is not entitled to relief on this basis.

### IV. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Next, James argues that appellate counsel rendered ineffective assistance by (1) failing to communicate with him, (2) failing to investigate the facts of his case, (3) failing to object to a record of insufficient completeness, (4) failing to present meritorious issues, and (5) failing to provide him with accurate information. We disagree.

To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel failed to raise a meritorious legal issue and that the petitioner was actually prejudiced by this failure. *In re Pers. Restraint of Maxfield*, 133 Wn.2d 332, 344, 945 P.2d 196 (1997). James does not identify any meritorious legal issue that appellate counsel could have raised on direct appeal. Accordingly, he cannot demonstrate that his appellate counsel was ineffective.

### V. CUMULATIVE ERROR

Finally, James argues that cumulative error denied his right to a fair trial. The cumulative error doctrine applies where multiple trial errors combine to deny the accused a fair trial, even if the errors individually would not warrant reversal. *In re Det. of Coe*, 175 Wn.2d 482, 515, 286 P.3d 29 (2012). Because James has not demonstrated any trial error, the cumulative error doctrine does not apply.

We deny James's petition.

No. 49767-1-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Lee, A.C.J.

_____
Cruser, J.